OPINION OF THE COURT
John C. Marbach, J.
This court has been assigned to try the above-entitled action involving an alleged claim for psychic or mental damage arising from a hijacking on an international flight. The plaintiff also claims minor physical injuries.
I was also directed to hold a preliminary hearing pursuant to CPLR 4511 which provides that the court shall take judicial notice on questions of law. The particular language to be examined is the phrase, “lesion corporelle” in the Warsaw Convention.
The immediate reaction of this court after reading Rosman v Trans World Airlines (34 NY2d 385), which had held that lesion corporelle means bodily injury, which in its ordinary meaning does not connote more than physical wounds, was to dismiss. But the plaintiff here was prepared to go ahead with an expert witness who had been *479 brought from Canada, and it seemed most practical to conduct the hearing and to reserve judgment.
This court now concludes that upon the record made in this hearing, which is the very first conducted in this State, that lesion corporelle includes the concept of mental injury as a recoverable damage, even in the absence of a concomitant physical manifestation.
The official text of article 17 of the Warsaw Convention is in French as follows: “Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lésion corporelle subie par un voyageur lorsque 1’accident qui a causé le dommage s’est produit á bord de l’aéronef ou au cours de toutes opérations d’embarquement et de débarquement.” (49 US Stat 3000, 3005.) The unofficial translation in English is: “The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.” (49 US Stat 3014, 3018.) The first issue to be resolved is whether the principle of stare decisis compels this court to accept the conclusion reached by the Court of Appeals in Rosman (supra). In Rosman, the Court of Appeals started from the premise of a stipulation that the words “bodily injury” are an accurate translation from the French words, lesion corporelle. That court further ruled that there was no necessity for a hearing under CPLR 4511 since there was no dispute over the proper translation. Assuming the accuracy of the court’s premise that no dispute existed, such a holding should not bind all future claimants where the underlying question was not fully litigated.
The juridical necessity for a full hearing under CPLR 4511 was emphasized by the same firm of attorneys for Trans World Airlines in its brief submitted to the Court of Appeals in Rosman (supra) at pages 10, 11, 48 and 49 of its brief printed in volume 6943 of the Records of the Court of Appeals. Their counsel insisted that the trial courts should have held hearings at which evidence on the French legal meaning of the key words lesion corporelle could have been given, and that only after a full hearing could a complete *480 record have been made upon which an appellate court would be able accurately and competently to pass on these complex issues. Counsel further argued that the plaintiffs in that case had not provided such information to enable the court to take judicial notice of the legal meaning of the phrase.
Counsel, again, went on to argue that the paucity of information provided in the record was insufficient.
The court most respectfully now submits that defendant’s insistence in Rosman (34 NY2d 385, supra) on the necessity for such a full hearing was correct, and their concern there that the many shadings of meaning which flow from different texts can only be ascertained after a full and complete hearing has been answered by the hearing which has been had here.
We have employed the basic principle that where the intent of the drafters of the language can be ascertained without a transformation of the actual text, that such intent should control. This court has reached its determination solely upon the record made here and will discuss later in this opinion other Federal opinions to determine whether any reasoning, precedent or documentary evidence cited in those opinions would preclude this conclusion.
Rene H. Mankiewicz received a Bachelor of Laws degree from the University of Frankfurt in 1926, where his studies included German civil law and where he, at one time, was a Judge of the Court of First Instance for civil law cases. In 1932, he went to Lyons, France, where he became the secretary general of the Institute of Comparative Law. At the same time he also studied at the University of Lyons and achieved a doctorate degree in 1936. During this time he translated a number of legal documents into French, and from French into a number of other languages, particularly as a secretary for the International Labor Organization. In 1940, he went to the French University in Shanghai and became a professor of law teaching civil law and international law, and his teachings there were in French. After World War II he went to Canada, to the department of economics and political science of McGill University. He took up part-time work for the Interna *481 tional Civil Aviation Organization (ICAO), whose purpose is to establish international rules for aeronautics, and which has become a part of the United Nations. Eventually Professor Mankiewicz was with ICAO for 18 years, drafting working papers, including documents in both French and English; writing rules of procedure; and drafting texts. The work of administering the Warsaw Convention was taken over by ICAO, and this witness has said that “since ’47 I have lived with that thing”. For a period of five years, up to 1965, he was a senior legal officer of ICAO, when he retired. Then he went to the faculty of law at McGill University to the Institute of Air and Space Law, teaching private air law and acting as the editor-in-chief of the yearbook on air and space law, as well as other subjects. This teaching largely involved the Warsaw Convention. In 1971, he went to the Sorbonne and taught graduate courses on international air law, which were conducted in French. He is a member of the Air Law Committee of the International Law Association; he was a member of the Secretariat of The Hague Conference, which will be otherwise discussed in this opinion. The details of his day-to-day activities appear in the record. He characterized himself as an internationally known expert on the Warsaw Convention and aviation law.
This court finds Professor Mankiewicz to be uniquely qualified as such an expert and has accepted his opinions here, buttressed as they are by the other material.
The substance of his testimony is that the French text of the Warsaw Convention is the only official text and the only one officially adopted and ratified by the Senate. The English translation, which appears in the United States Statutes at Large (49 US Stat 3014, 3018), was unofficially made by the United States State Department. Our inquiry then must be necessarily limited to the meaning of the French text. This French text was drafted primarily by experts who were used to working in concepts of the civil law, and it is necessary that phrases be examined for their meaning in the context of the legal usage. In many cases word-by-word or literal translation is not an absolute equivalency of the meaning intended. In this particular case the minutes of the Warsaw Convention do not shed light on *482 the intention of the drafters with respect to the words, lesion corporelle, and so that approach is not available.
The dictionary or literal translation of lesion corporelle as “bodily injury” is not accurate as used in a legal document. The French civil law distinguished only between injury or damage suffered by a person and damage done to that person’s assets or patrimonium. There is no categorical separation between physical and mental damage.
In connection with this analysis, this court has considered, and Professor Mankiewicz has testified, that two of the principal drafters of the Warsaw Convention, Dean Ripert of France and Otto Riese of Germany, have written analyses in which they have made it very clear that the concept of lesion corporelle includes psychic damage or mental disturbance. The first of these, in the record here as Exhibit No. 1, is an extract from the Journal of International Law written by George Ripert in 1930, shortly after the Warsaw Convention of October, 1929 in which he uses the expression, “les dommages corporels”. The witness translated this passage as meaning that article 17 of the Warsaw Convention covers damage suffered by a person as distinguished from damage also suffered by that person in his patrimonium.
In the civil law, under the concept of dommage corporel there would be compensation for mental injury alone (one of the reasons for the conclusion reached by the Court of Appeals in Rosman, 34 NY2d 385, supra, was an incorrect translation of another French treatise which has interpreted the meaning of this same phrase. This will be discussed later herein).
Exhibit No. 2 is a portion of a doctoral thesis published in 1933 by a Miss Yvonne J. Blanc-Dannery, under the supervision of Professor Ripert. She wrote that “the use of the term ‘lesion’ after the words for death or wounding comprises and envisages the case of traumatism or of perturbations (or derangements), the consequences of which do not manifest themselves immediately within the organism, in relation to which the accident can be established.”
Otto Riese was a member of the German delegation to the Warsaw Convention and later a Judge of the German *483 Supreme Court, as well as the head of the German delegation at The Hague Conference, which modified certain articles of the Warsaw Convention, including the change in the translation of article III, which will be discussed later in this opinion.
Riese, in his translations of article 17 of the Warsaw Convention (49 US Stat 3000, 3005) did not translate lesion corporelle literally, but as “any other harm to the healths of the person.”
One article of his is in evidence as Exhibit No. 5 in the original German, which reads as follows:
“Nach Art. 17 WAbk ist der durch Totung, Korperverletzung und sonstige Gesundheitsbeschadigung eines Reisenden entstandene Schaden zu ersetzen. (Uber den Umfang der Ersatzpflicht siehe unten III 6.)
“Durch die Erwahnung der Gesundheitsbeschadigung (eine etwas freie Ubersetzung des franzosischen Textes, der von ‘lesion corporelle’ spricht) neben der Korperverletzung Cblessure’) soil offenbar klargestellt werden, dass auch jede Beeintrachtigung des physischen oder psychischen Wohlbefindens einzubeziehen ist, die keine mechanische Einwirkung zur Ursache oder keine anatomische Veranderung im Korper zur Folge hat.”
Professor Mankiewicz’ translation of this article appears in the record on pages 81 through 83, as follows:
“Q. Would you give us, perhaps, the German words which you begin with and the German words with which you end so we can identify it for the record?
“A. It would be the last paragraph on that page 442 which starts with ‘Durch’ and ends with ‘hat.’
“Q. Would you translate for the Court, sir?
“A. By mentioning the harm to the healths (somewhat liberal translation of the French text which mentions ‘lesion corporelle’) next to Korperverletzung, namely Cblessure’) which is a French term used in this, ‘blessúre’ is intended to make it clear that any harm of the physical or psychic well-being is to be included, even if that harm has not resulted in a mechanical impact or in anatomic modification in the human body.
*484 “the court: Mechanical impact or —
“the witness: Anatomical modification or change within the body.
“the court: Let me see it, please.
“the witness: Yes, sir.
“(Document handed to the Court)
“the court: The German word is “psychischen,” is that right?
“the witness: Yes, the end of it.
“the court: You left something out in the translation.
“the witness: No —
“the court: I think you did. You have two different words there. ‘Make it clear that any physical — ’
“the witness: ‘That in addition to any Korperverletzung,’ that’s the word we just had in brackets, ‘blessure’ —
“the court: That’s wounding, isn’t it?
“the witness: That’s wounding, yes. ‘It shall be made clear that any harm or impact on the physical or psychic well-being — ’
“the court: That’s not the way you read it originally, ‘physical or psychic.’
“the witness: Yes, ‘well-being.’”
Another article by Professor Riese, written in 1951, at a time when he was dean of the faculty of law of the University of Lausanne from the work entitled: “Precis de Droit Aerien International et Suisse”, also discusses the meaning of lesion corporelle in the following language: “La discrimination faite per le texte entre ‘la blessure’ et ‘toute autre lesion corporelle’ demontre que la convention doit etre applicable, non pas seulement a la blessure proprement dite, mais egalement a toute atteinte a la sante du passager, telles que les consequences d’un choc psychique ou d’un mal de l’air.”
Thé witness translates this article in the following answer from page 85 of the trial record here as follows: “A. Which says the following in English: ‘The distinction made in the text between ‘la blessure,’ which means wounding, ‘and toute autre lesion corporelle’, demonstrates that the *485 convention shall apply not only to the blessure, strictly speaking, but also to all harm done to the healths of the passengers, such as a consequence of a psychic shock or air sickness.’ Then he gives reference to other authors in the same meaning.”
In Rosman (34 NY2d 385, supra), the defendant had submitted to the Court of Appeals what purported to be a translation by Henri P. de Vries of a text by H. and L. Mazeaud and A. Tunc. The reference appears as footnote 11 at the bottom of page 397 of the Rosman opinion, and appears to have been heavily relied upon by the court in determining that article 17 connotes, “conspicuous physical injury”. The extract, however, is completely misleading, particularly since it leaves out of the original text the introductory qualifying phrase, “A premiere vue”, and a complete sentence from the same paragraph which reads, “Mais tel n’est pas le sens veritable ququel il faut ici s’attacher.”
What the author was saying was that at first glance it would appear that corporel relates to injuries which can be seen or touched, but that is not the only sense to be attached to those words.
Again, Professor Mankiewicz says that this text from which only a portion of a sentence was taken does not preclude the inclusion of mental injury within dommage corporel.
The complete text of the Mazeaud article in French appears in evidence as Exhibit No. 8 here, and the discussion appears at page 86 et seq. of the hearing record.
The sentence in English, which is to be compared to the footnote is translated as: “At first blush, one might think that dommage materiel, is that which affects the senses, what one can see, what one can touch, in a word dommage ‘corporel’ in the very broad legal meaning of the term, while dommage moral is that which affects only the non-concrete, the invisible (footnote 1), thoughts and feelings: dommage ‘incorporeV (footnote lb). But such is not the true meaning that we must stick to.”
One of the difficulties in an examination by any Judge of this kind of material is that the literal English translation *486 may still leave some doubt. Again, this court not only had the benefit of the testimony of Dr. Mankiewicz, but of an article coauthored by Ripert in which he discusses the various kinds of damage and sets up three major categories: one: material damage to corporeal things; two: pecuniary damage not resulting from injury to or loss of corporeal objects; three: injuries to the health or the life of persons. He also discusses a category of “moral damage” such as injuries to honor or to sentiments of affection.
In summary, the Mazeaud text does not exclude the inclusion of psychic damage within the meaning of lesion corporelle.
Professor Riffaterre, the French language expert for the defendant, testified that the de Vries translation was simply a change in the word order and did not affect, materially, the meaning, but he does not challenge the accuracy of the translation by Professor Mankiewicz.
The Hague Conference brought about a significant change in article 3 of the Warsaw Convention (49 US Stat 3001, 3015) which controls the content of the ticket that must be delivered to a passenger. That article may be found in court’s Exhibit No. 2, at page 4, and in English in Exhibit No. 12, which is an extract from the comments and proposals of the United States, being a document of the conference itself; and the French text is found in Exhibit No. 13.
The English text reads as follows:
“Advice to International Travellers (in letters not less than V2 centimeter high)
“Travellers embarking upon a journey involving an ultimate destination or stop in a country other than the country of origin are advised that the Warsaw Convention may be applicable to their journey. The Convention governs the liability of carriers to passengers and shippers and limits liability for personal injury or death in most cases to — Poincare gold francs.”
The French text uses the phrase “ou de lesion corporelle”. Adopted in 1955, these were later incorporated in the Montreal Agreement of 1966 (31 Fed Reg 7302), to which all of the major airlines were parties. This last *487 agreement was then approved by the Civil Aeronautics Board of the United States in a formal order.
Professor Lowenfeld, a witness for the defendant, was the chairman of the United States delegation to Montreal where that agreement was adopted.
Again, I deem it especially significant that the only document which is delivered to the air passenger informs him that the limitations of liability relate to personal injury or death. There is no record whatsoever that at the important Hague Conference or at the proceedings at Montreal that any objection was made to an official translation into English of lesion corporelle into “personal injury”.
While argument has been made that attempts were made at various conferences or conventions to amend article 17 by the addition of the phrase, ou mentóle, that effort in behalf of clarification was not a subject within the purposes of such conferences or conventions until the Guatemala City Conference in 1971. At that time scholars there present changed the language so as to substitute “personal injury” for bodily injury. While it is technically correct to say that the United States Government has not yet ratified this proposed convention, and it has not yet, therefore, become a treaty, it is reflective of the international opinion as to the proper wordage for article 17. (The text of the Guatemala City Protocol is found in court’s Exhibit No. 2 at pages 17-18.)
Professor Andreas F. Lowenfeld testified for the defendant that the phrase, lesion corporelle, meant bodily injury. He has outstanding qualifications in the field of international law and he has done a great deal of research into the history of the Warsaw Convention, but he is wholly without practical experience in either the study of or practice of French law or the French legal usage of technical terms.
Professor Michael Riffaterre is a teacher of French literature and of French lexicography and semantics. He cited to the court a particular French dictionary as support for his translation of lesion corporelle as bodily injury. That dictionary specifically attributes that meaning to a medical context. Again, Professor Riffaterre had no experience in the preparation of or translation of technical French legal documents.
*488 The defendant argues in its posthearing memorandum that the text in English was before the United States Senate and that, therefore, the English text should be followed. In its brief submitted to the Court of Appeals in Rosman (34 NY2d 385, supra), beginning at page 17, it specified that the French text governed and quoted from Block v Compagnie Nationale Air France (386 F2d 323, 330): “The binding meaning of the terms is the French legal meaning.” It went on further before the Court of Appeals to urge that one of the avenues of approach must be the French legal meaning of the words, lesion corporelle,
By proceeding here to interpret the meaning of one phrase, which is used in French law as having a specific meaning, we are not applying French law in the choice of law sense which concerned the Court of Appeals in Rosman (supra). The argument made there as to the applicability of . past or present French law as being irrelevant was based solely upon the stipulated accuracy of the English translation. The Court of Appeals there agreed that a hearing would be appropriate where the meaning of the foreign text of the treaty is in dispute and an accurate translation is the goal. The principle enunciated by the Court of Appeals is not violated by the hearing held here or the result reached.
In its argument here the defendant has urged that the word, mentale could have been used if the intent of the Warsaw Convention had been to include psychic trauma or mental injury. Professor Mankiewicz has said here that the use of the word mentale would add nothing and means nothing.
The defendant submits no expert or any treaty in which , lesion mentale is used as a phrase having a specific legal meaning or constituting a separate category of damage.
Once lesion corporelle is established as a major category of damage, then the items of death, or wounding are inclusive terms, and the ejusdem generis argument falls.
Defendant also argues that Professor Mankiewicz never translated lesion corporelle into the exact words, “personal injury”. That is a correct reading of the record here. What the witness was doing was expressing himself in English, *489 in differentiating between the injury to a person’s assets and the injury to a person in any other way. He does not adopt for himself the phrase, “personal injury”, but he apparently recognizes that scholars in the field have, on other occasions, such as at The Hague Conference used that expression for an English translation of lesion corporelle. I find no material inconsistency between the phrase, “injury to the person”, when used by an expert who is skilled in French legal usage and “personal injury” as used by English translators in official documents.
The final inquiry is to determine whether there was anything in American judicial precedents that would, by its reasoning or its considered conclusion or legal history reflected therein making unreasonable the result reached here.
In Grey v American Airlines (227 F2d 282, 285, cert den 350 US 989), Judge Medina refers to the referable damages as including “personal injuries”. There is no detailed analysis and no showing of the bases upon which he reached his conclusion.
In Husserl v Swiss Air Transp. Co. (351 F Supp 702, 707, affd 485 F2d 1240), Judge Tyler held that a hijacking is within the ambit of the term, “accident” as used in the Warsaw Convention. He employs the English translation of article 17. The defendant, Swiss Air conceded in its brief that mental anguish and suffering were within the meaning of “bodily injury”. Judge Tyler concludes (p 708) that he has “some difficulty reading the Warsaw Convention to permit recovery for mental anguish and suffering alone.” His discussion then goes on to mention the Guatemala City Protocol as having substituted the phrase personal injury for “wounding or bodily injury”. The discussion of the meaning of lesion corporelle appears to have been a side issue and no hearing was held. A reading of the opinion indicates the uncertainty in Judge Tyler’s mind.
One interesting discussion by Judge Tyler, which has been referred to herein, is that as a result of the Montreal Agreement all of the carriers have agreed to the translation of article III in the passenger ticket as “personal injury”. He went on to say, “If the ticket fails to give *490 adequate notice of the applicability of the Convention, the carrier may not take advantage of the limitations on liability it provides.” (Husserl v Swiss Air Transp. Co., supra, p 708.)
In Block v Compagnie Nationale Air France (386 F2d 323, supra, cert den 392 US 905), the court said that the applicability of the Warsaw Convention is premised upon a contract of carriage, and that the passenger’s cause of action is based on this contract of carriage and not on any tort theory. The court there cites Calkins in his article entitled, “The Cause of Action Under the Warsaw Convention.” This is the same article cited by the Court of Appeals in Rosman (34 NY2d 385, supra). Calkins was the chief of the American delegation to The Hague Conference. This footnote says: “Even a cursory reading of this text will convince the reader that the French law of contractual liability of the carrier was intended to be the governing basis of the convention.” (386 F2d, at p 331, n 21.)
This court further covers the subject of the overriding intention of the drafters that conflicts of law problems be eliminated by drafting the convention in French in a single copy. The court went on to say: “The binding meaning of the terms is the French legal meaning. The principle of the primacy of the French legal system thus means a harmonizing construction of the Convention.’ ” (Block v Compagnie Nationale Air France, supra, p 330.)
Among the authorities quoted by the court in Block (supra) are George Ripert and Riese.
The principal question was the effect of a charter. The court held the Warsaw Convention to be applicable and that the possible limitations of the Warsaw Convention depended upon the delivery to the passengers of a ticket stating that the flight was subject to the provisions of the convention.
I conclude, therefore, that the above judicial holdings do not require any change in the court’s conclusion being reached here. ,
I do not now urge upon our appellate courts that the history and the reasoning set forth in the Block case should control or that I have come to my conclusions because of *491 that reasoning or the history. I first and separately considered the record made before me on the hearing and the exhibits there introduced.
It may very well be that upon the trial of this action that the determination of applicable law made herein will become immaterial because if it be shown upon the trial record that the minor bodily injuries were received in the course of the hijacking, and that there was a causal connection between that physical injury and the mental trauma, then Rosman (supra), as written, would apply and the liability for psychic trauma alone may never come into the record.
If appropriate upon the case as tried, this court will submit special questions to the jury so that the legal issues may be demonstrably preserved for possible review.
I now set the case down for trial, before me, at Trial Term, Part V, of this court for February 12, 1979, subject only to any unfinished case then before the court. This case has already been reached in its normal order and the trial has been deferred for the purposes of this hearing and the case was therefore passed in its normal turn. The action is set down peremptorily against both sides.
Since this hearing determines a question of law to be charged at the trial, no order shall be entered hereon.