**In re EASTERN AIRLINES, INC., ENGINE FAILURE, MIAMI INTERNATIONAL AIRPORT on MAY 5, 1983.**

**MDL No. 575.**

United States District Court, S.D. Florida, Miami Division.

Feb. 3, 1986.

Michael S. Olin, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Owen, P.A., Miami, Fla., for plaintiff.

Richard J. Thornton, Calvin F. David, and Kathleen M. O'Connor, Thornton, David & Murray, Miami, Fla., for defendant.

## ORDER DISMISSING COMPLAINTS WITH PREJUDICE *

EDWARD B. DAVIS, District Judge.

THIS MATTER is before the Court on Defendant EASTERN AIRLINES, INC.'s, Motion for Judgment on the Pleadings. On January 21, 1986, a hearing was held on Defendant's Motion. After review of the memoranda submitted in support of and in opposition to this motion, and upon consid-

---

\* All MDL 575 cases are hereby dismissed with prejudice, with the exception of Case NO. 84–1259–CIV–GONZALEZ. *See* "Disposition of Complaints" Section, *infra* at 15–21.

eration of the arguments presented at the hearing on this motion, it is

ORDERED AND ADJUDGED that the Complaints filed in this case are DISMISSED with prejudice. The parties are directed to the "DISPOSITION OF THE COMPLAINTS" section, captioned below, for the precise disposition of each Complaint.

## DISCUSSION

This action arose on or about May 5, 1983, out of Eastern Airlines' Flight No. 855, bound for Nassau, Bahamas, from Miami International Airport, Miami, Florida. Shortly after take-off, one of the aircraft's engines failed, and the plane turned around for return and landing in Miami. After turning around, the aircraft's other two engines failed.

The crew and passengers prepared for ditching of the aircraft as it lost altitude due to the engine failure. After a period of flight without any engines, the crew was able to restart one engine, under whose sole power the plane landed at Miami International Airport.

Each of the Complaints filed in this case contains four basic counts: one in contract, two in tort, and one under the Warsaw Convention. Defendant EASTERN AIRLINES, INC., has filed a Motion for Judgment on the Pleadings, asserting, *inter alia*, that nowhere in the Complaints are there allegations that Plaintiffs sustained physical injury, bodily injury, impact and/or direct physical contact during or resulting from the subject flight. Defendant argues the Complaints fail to state claims upon which relief can be granted.

This Order is directed to the sufficiency of the Plaintiffs' allegations under state law, i.e., under Breach of Contract (Count I), Negligence (Count II), and entire Want of Care (Count III) theories,[1] and under federal law, pursuant to the Warsaw Convention (Count IV).

## COUNT I—EASTERN'S BREACH OF CONTRACT TO USE THE HIGHEST DEGREE OF CARE

■ Plaintiffs contend that the state claim aspects of this case are governed by *Kirksey v. Jernigan,* 45 So.2d 188 (Fla. 1950). The Court finds that *Kirksey* does not support Plaintiffs' claims for breach of contract. In *Kirksey,* the Florida Supreme Court reaffirmed the long-standing Florida rule that "there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved." *Id.* at 189. *Kirksey* has been interpreted to mean that there can be no recovery for mental distress caused by a breach of contract in the absence of an independent willful tort. *Crenshaw v. Sarasota County Public Hospital Board,* 466 So.2d 427, 428 (Fla.2d DCA 1985); *Gellert v. Eastern Airlines, Inc.,* 370 So.2d 802 (Fla.3d DCA 1979), *cert. denied,* 381 So.2d 766 (Fla.1980); *Forde v. Royal's, Inc.,* 537 F.Supp. 1173, 1175 (S.D.Fla.1982).

Consequently, in the instant suit, the sufficiency of Plaintiffs' allegations under Counts II and III, the tort counts, is determinative of the viability of Plaintiffs' cause of action in contract. Because this Court concludes, as discussed below, that the Complaints fail to adequately allege an independent willful tort, there can be no recovery under Count I for mental anguish arising out of a breach of contract.

## COUNT II—EASTERN'S NEGLIGENCE

■ Count II seeks recovery for simple negligence. Under Florida law "there is no

---

1. Although the Plaintiffs claim it "is hardly axiomatic that Florida law will be applicable," *see* Plaintiffs' Memorandum Opposing Defendant's Motion for Judgment on the Pleadings at 2 n. 3, both Plaintiffs and Defendant argued the sufficiency of the state law claims as governed by the law of Florida. Under both conflicts of law principles and the *Erie* doctrine, this Court concludes that the substantive law of Florida governs the state law claims. *See Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Griffith v. United Airlines,* 416 Pa. 1, 203 A.2d 796 (1964). *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla.1980).

cause of action for psychological trauma alone when resulting from simple negligence." *Brown v. Cadillac Motor Car Division*, 468 So.2d 903 (Fla.1985). *See also Champion v. Gray*, 478 So.2d 17 (Fla. 1985). Recovery for emotional distress caused by simple negligence, as alleged in Count II, is therefore precluded absent allegations of discernible and demonstrable physical injury. *Brown*, 468 So.2d at 903 (holding that, in cases where a person suffers no physical injuries in an accident the "psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist").

Plaintiffs argue that *Brown* and *Champion* are not controlling because this suit involves emotional distress caused by fear for one's own safety, and not distress caused to a bystander out of fear for another's safety. While it is true that "personal" and "bystander" distress constitute two distinct emotional circumstances, *see Champion v. Gray*, 478 So.2d 17, 18 (Fla. 1985), recognition of this distinction offers no relief to the Plaintiffs in the case *sub judice*.

In *Brown* and *Champion* the impact rule was modified to allow recovery for damages flowing from discernible physical injury caused by psychic trauma resulting from negligent injury to another. If, as Plaintiffs argue, these "bystander" cases leave undisturbed prior Florida law regarding recovery for emotional distress caused by fear for one's own safety, then Plaintiffs' claim for negligence must fail, for the "impact rule" would bar recovery. Alternatively, if this Court were to fashion a "new" rule, regarding recovery for mental distress caused by fear for one's own safety, as opposed to fear for another's safety, it would nonetheless decline to allow recovery for psychic trauma alone. *Cf. Champion*, 478 So.2d at 18 ("the public policy of

this state is to compensate for physical injuries ... we are willing to modify the impact rule, but are unwilling to expand it to purely subjective and speculative damages for psychic trauma").

Absent allegations of impact and/or direct physical contact resulting from Defendant's alleged negligence, this Court concludes that there can be no recovery for emotional distress caused by simple negligence, unless Plaintiffs can establish discernible *physical* consequences resulting from the distress.[2]

### COUNT III—EASTERN'S ENTIRE WANT OF CARE

In *Kirksey v. Jernigan*, 45 So.2d 188, 189 (Fla.1950), the Florida Supreme Court stated:

We do not feel constrained to extend [the rule barring recovery for mental pain and anguish unconnected with physical injury] to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages.

In the previously-cited case of *Brown v. Cadillac Motor Car Division*, 468 So.2d 903 (Fla.1985), a negligence case, the Florida Supreme Court noted that its "ruling does not disturb any prior decisions allowing [damages for psychological trauma] in intentional tort cases." *Brown*, 468 So.2d at 904 n. *. Plaintiffs, therefore, argue that Count III, entitled "Entire Want of Care", states a cause of action under *Kirksey*. Defendant counters that *Kirksey* did not establish an independent cause of action for "entire want of care." Upon review of the relevant case law, this Court concludes, as Defendant contends, that

---

**2.** This Court concludes, consistent with the Florida Supreme Court's ruling in *Kirksey*, that simple negligence, even if it did exist, could not serve as the basis for recovery under Count I for emotional distress arising out of a breach of

contract. *Kirksey v. Jernigan*, 45 So.2d 188, 189 (Fla.1950). *See also Crenshaw v. Sarasota County Public Hospital Board*, 466 So.2d 427 (Fla. 2d DCA 1985).

*Kirksey* did not establish an independent cause of action in tort.

When *Kirksey* was decided, Florida had not yet recognized an independent cause of action for intentional infliction of emotional distress. Generally, recovery for emotional distress alone was barred. In *Kirksey*, however, the Florida Supreme Court recognized for the first time, not a new tort, but, that damages for emotional distress alone could be recovered if the defendant was guilty of another recognized intentional tort.[3] Later Florida Supreme Court opinions support this interpretation of *Kirksey*. See e.g., *Slocum v. Food Fair Stores of Florida*, 100 So.2d 396 (Fla.1958). In *Slocum*, the Supreme Court of Florida stated that the *Kirksey* decision "would apparently allow recovery for mental suffering, even absent physical consequences, inflicted in the course of *other* intentional or malicious torts...." *Id.* at 395 (emphasis added).

This Court concludes that Count III can withstand a motion to dismiss for failure to state a cause of action only if facts are alleged which, assuming their truth, would put the Defendant on notice of an independently recognized intentional tort.

In *Metropolitan Life Insurance Company v. McCarson*, 467 So.2d 277 (Fla.1985), the Florida Supreme Court recognized for the first time the tort of intentional infliction of emotional distress. Section 46 of the Restatement (Second) of Torts (1965) has been adopted in Florida as the appropriate definition of the tort. *Id.* Section 46 defines the tort of intentional infliction of mental distress as follows:

§ 46. Outrageous Conduct Causing Severe Emotional Distress

... One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts, § 46 (1965). To state a cause of action under this definition, it is necessary that Plaintiffs allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Insurance Co.*, 467 So.2d at 279.

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts, § 46, comment h (1965). In the instant suit, Count III realleges the previous counts for breach of contract and negligence and alleges that EASTERN acted with an "entire want of care" or that the subject incident was caused by the "outrageous and willful misconduct" of EASTERN. The facts alleged in support of these claims include EASTERN's alleged failure to properly inspect, maintain, and operate its aircraft. More particularly, it is alleged that EASTERN's records reveal at least one dozen prior instances of engine failure due to missing "O-rings", yet, EASTERN failed to cure the problem.

This last allegation is, perhaps, the Plaintiffs' strongest attempt to allege some type of scienter on the part of EASTERN. The Court finds, however, that the allegations contained in the Complaints, assuming their truth, do not support the contention that EASTERN AIRLINES acted "intentionally or recklessly" as required to state a cause of action for intentional infliction of emotional distress. There are no facts alleged to support the claim that EASTERN is guilty of "outrageous and willful misconduct."

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Lia-

---

3. In *Kirksey*, the court permitted damages for mental pain and anguish, finding that the defendant was guilty of the separate tortious act of "tortious interference with rights involving dead human bodies...." *Kirksey v. Jernigan*, 45 So.2d at 189.

bility has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts, § 46, Comment d (1965) (*cited in Metropolitan Life Insurance Company v. McCarson*, 467 So.2d 277, 278–79 (Fla.1985)).

This Court concludes that Plaintiffs have failed to state a cause of action under Count III, the intentional tort count.

### COUNT IV—WARSAW CLAIM

■ Article 17 of the Warsaw Convention,[4] which establishes the liability of international air carriers for harm to passengers, provides as follows:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

In *Air France v. Saks*, —— U.S. ——, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Supreme Court held that liability under Article 17 of the Warsaw Convention arises "only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." 105 S.Ct. at 1345.[5]

The Defendant does not contend that the engine failure and subsequent preparations for ditching of the aircraft did not constitute an accident within the meaning of Article 17. Clearly, those events were not the normal and expected operations of the aircraft. *See, e.g., Weintraub v. Capital International Airways, Inc.*, 16 CCH Av. Cas. 18,058 (N.Y.Sup.Ct., 1st Dept.1981) (testimony that "sudden dive" led to pressure change causing plaintiff's hearing loss indicates injury was caused by an "accident"), cited in *Air France v. Saks*, 105 S.Ct. at 1345–46. Rather, the Defendant objects to application of the Warsaw Convention because, assuming the existence of an accident, the Plaintiffs have not alleged injuries which are cognizable under Article 17.

The operative language of Article 17 provides recovery for damages "sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger." Defendant contends that this language refers only to physical injuries. Plaintiffs respond that no such limitation is implied.

Among the cases relied on by Plaintiffs is *Krystal v. British Overseas Airways Corp.*, 403 F.Supp. 1322 (C.D.Cal.1975). In *Krystal*, airline passengers brought suit against the airline under the Warsaw Convention for physical and psychological injuries incurred when an airplane was hijacked. *Id.* One of the plaintiff's demands for recovery was based solely on mental distress, which included fright, anxiety, stress, loss of sleep, and fear. *Id.* at 1322–23. The court ruled that mental injuries, standing alone, are compensable under the Warsaw Convention. *Id.* at 1324. In reaching this conclusion, the court quoted extensively from *Husserl v. Swiss Air Transport Co.*, 388 F.Supp. 1238 (S.D.N.Y. 1975), reasoning that "[t]o effect the trea-

---

**4.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.App. § 1502.

**5.** When injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, the injury has not been caused by an "accident" within the meaning of Article 17 of the Warsaw Convention. *Air France v. Saks*, —— U.S. ——, 105 S.Ct. 1338 at 1346, 84 L.Ed.2d 289. Thus, in *Saks*, the Court held that the plaintiff's hearing loss, which was caused by the normal operation of the aircraft's pressurization system, was not compensable under the Warsaw Convention. *Id.*

ty's avowed purpose, the types of injuries enumerated should be construed expansively to encompass as many types of injury as are colorably within the ambit of the enumerated types. Mental and psychosomatic injuries are colorably within the ambit and are, therefore, comprehended by Article 17." *Id.* at 1323–24 (quoting *Husserl*, 388 F.Supp. at 1250).

Indisputably, that portion of the *Krystal* decision which concludes that a hijacking is an accident within the meaning of Article 17, *see Krystal*, 403 F.Supp. at 1323, remains valid in light of *Saks*. In fact, *Krystal* is cited with approval by the Supreme Court in *Saks* for the proposition that the definition of "accident" under Article 17 should be flexibly applied. *Air France v. Saks*, 105 S.Ct. at 1345. Whether the phrase "bodily injury" should, similarly, be given an expansive construction was not addressed by the Supreme Court. However, the Court did provide some guidance on how this issue is to be resolved.

In *Saks*, the Supreme Court set forth an approach to be utilized in determining the meaning of terms contained in the Warsaw Convention. *Id.* at 1342. Upon application of this approach, this Court concludes, as discussed below, that mental anguish, alone, is not encompassed within the meaning of "bodily injury" under the Warsaw Convention.

French was the sole official language of the Warsaw Convention. Accordingly, in *Block v. Compagnie Nationale Air France*, 386 F.2d 323 (5th Cir.1967), *cert. denied*, 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968), the Fifth Circuit held that the binding meaning of the terms of the Warsaw Convention is the French legal meaning of those terms.[6] The Supreme Court in *Saks* reaffirmed this method of analysis. *Air France v. Saks*, 105 S.Ct. at

1342 (citing with approval *Block*). Thus, doubt is cast upon *Krystal*, and other cases following the district court decision in *Husserl*, since the *Husserl* court expressly declined to view as binding the French legal meaning or interpretation of the treaty. *Husserl v. Swiss Air Transportation Company, Ltd.*, 388 F.Supp. at 1249.[7]

It is this Court's responsibility to give the specific words of the Warsaw Convention a meaning consistent with the shared expectations of the signatories of the treaty. *Air France v. Saks*, 105 S.Ct. at 1342. Thus, as the Supreme Court has instructed, "[w]e look to French legal meaning for guidance as to these expectations...." *Id.*

The French text of the relevant part of Article 17, relating to injury, reads: "Le transporteur est responsable du dommage survenu en cas de *mort*, de *blessure ou de toute autre lésion corporelle* subie par un voyageur...." Quoted in *Air France v. Saks*, 105 S.Ct. at 1338 n. 2 (emphasis added).

The official American translation of the above-quoted portion of Article 17 reads: "The carrier shall be liable for damage sustained in the event of the *death* or *wounding* of a passenger *or any other bodily injury* suffered by a passenger...." 49 Stat. 3000 (emphasis added).

As stated in *Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152, 1156 (D.N.M.1973), the controlling phrase would seem to be "ou de toute autre lésion corporelle" (or any other bodily injury), for both the terms "mort" (death) and "blessure" (wound) are by necessity incorporated within it. "Lésion corporelle" (bodily injury) has been defined to mean "an infringement of physical integrity (l'atteinte à l'integrité physique)." *Id.* (quoting Henry P. de Vries translation). The *Burnett* court observed, as does this Court, that the definition does

---

**6.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**7.** Judge Tyler, speaking for the court in *Husserl*, stated: "It is true that this country adhered to the French text of the Convention, as did all of the signatories ... but, as I now view the matter, that fact does not mean that the French legal meaning of the words or the French legal interpretation of the treaty is binding." 388 F.Supp. at 1249.

not indicate that mental injuries are to be included within its domain. *Id.* [8]

"In interpreting a treaty it is proper, of course, to refer to the records of its drafting and negotiations." *Air France v. Saks,* 105 S.Ct. at 1343 (citing *Choctaw Nation of Indians v. United States,* 318 U.S. 423, 431, 63 S.Ct. 672, 677, 87 L.Ed. 877 (1943)). After reviewing the legislative history and initial drafts of the Warsaw Convention, the court in *Burnett* concluded that "the inference is strong that the Convention intended to narrow the otherwise broad scope of liability under the former draft and preclude recovery for mental anguish alone." *Burnett v. Trans World Airlines, Inc.,* 368 F.Supp. at 1157. Because the *Burnett* court utilized an approach which was later declared by the Supreme Court in *Saks* to be the proper method of analysis, this Court finds the *Burnett* opinion to be well-reasoned, persuasive authority for the proposition that mental anguish alone is not encompassed within the French legal meaning of bodily injury.[9] This Court concludes, therefore, that mental anguish alone is not compensable under the Warsaw Convention.

### DISPOSITION OF COMPLAINTS

A. *Cases Removed Pursuant to the Federal Courts' Treaty Jurisdiction.*

Many of the suits filed in this case were removed pursuant to the federal courts' treaty jurisdiction. 28 U.S.C. § 1331. Absent an allegation of physical injury, the Complaints in this case do not state a cause of action under the Warsaw Convention.

Since the Warsaw Convention claim which was the basis for treaty jurisdiction is eliminated from the case, this Court has discretion to remand the remaining state claims. *In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). The parties, however, indicated their preference at the January 21, 1986 hearing, for this Court to retain jurisdiction over the pendent state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This Court, therefore, will dispose of all claims raised. For the reasons set forth in the "Discussion" section, it is

ORDERED AND ADJUDGED that the following cases are DISMISSED with prejudice:

1.  *Connie Gale and Michael Gale v. Eastern Air Lines,* Case No. 83–1950–CIV–DAVIS

2.  *Michael Gale and Connie Gale v. Eastern Air Lines,* Case No. 83–1951–CIV–ARONOVITZ

3.  *Rose Marie Floyd and Terry Floyd v. Eastern Air Lines,* Case No. 83–1949–CIV–NESBITT

4.  *Terry Floyd and Rose Marie Floyd v. Eastern Air Lines,* Case No. 84–1700–CIV–HASTINGS

5.  *Gloria Patterson and Edmund Patterson v. Eastern Air Lines,* Case No. 83–2193–CIV–KING

6.  *Robert Scharhag v. Eastern Air Lines,* Case No. 83–3014–CIV–HOE-VELER

---

8. The *Burnett* court also rejected the contention that "blessure" (wound) encompasses mental anguish. 368 F.Supp. at 1156. The court reasoned: "The critical words of Article 17, 'mort, de blessure and ou de toute autre lésion corporelle' must be examined together in order to ascertain their contextual meaning. Although the *French-English Dictionary of Legal Terms* by Jules Jeraute defines "blessure" to include not only a wound but also hurt or injury, when the term is modified by the subsequent phrase of the provision, it seems apparent that the drafters utilized the word in solely a physical sense." *Id.*

9. During the January 21, 1986 hearing, Plaintiff brought to this Court's attention the case of *Palagonia v. TransWorld Airlines,* 110 Misc.2d 478, 442 N.Y.S.2d 670 (N.Y.1978), in which a state court held that the term "lésion corporelle" as used in the Warsaw Convention includes the concept of mental injury, even in the absence of concomitant physical manifestation. *Palagonia,* 442 N.Y.S.2d at 671. Although the state court in *Palagonia* looked to the French text of the Warsaw Convention, this Court is unpersuaded that the result reached by the *Palagonia* court is correct. Instead, as expressed in the above text, the Court concurs with the federal district court's decision in *Burnett,* 368 F.Supp. at 1157.

7. *Thomas J. Nolan v. Eastern Air Lines,* Case No. 83–3013–CIV–ARO-NOVITZ

8. *Eugene H. Champ v. Eastern Air Lines,* Case No. 83–3016–CIV–DAVIS

9. *Frederick W. Hoehler v. Eastern Air Lines,* Case No. 83–3017–CIV–NESBITT

10. *Sally Ann Collins v. Eastern Air Lines,* Case No. 83–3078–CIV–ARO-NOVITZ

11. *Michael R. Dramis v. Eastern Air Lines,* Case No. 83–3079–CIV–HAS-TINGS

12. *Gary Dix and Sandy Dix v. Eastern Air Lines,* Case No. 84–1701–CIV–DAVIS

13. *Alexander Dix v. Eastern Air Lines,* Case No. 84–0033–CIV–DAVIS

14. *Sandy Dix and Gary Dix v. Eastern Air Lines,* Case No. 84–0030–CIV–DAVIS

15. *Dana Dix v. Eastern Air Lines,* Case No. 84–0032–CIV–SPELL-MAN

16. *Bruce Jacobs and Janet Jacobs v. Eastern Air Lines,* Case No. 84–0924–CIV–DAVIS

17. *Janet Jacobs and Bruce Jacobs v. Eastern Air Lines,* Case No. 84–0920–CIV–ATKINS

18. *Alexander Embry v. Eastern Air Lines,* Case No. 84–0922–CIV–PAINE

19. *Salim Khoury and Deborah Khoury v. Eastern Air Lines,* Case No. 84–1703–CIV–ATKINS

20. *Myriam Carrasco v. Eastern Air Lines,* Case No. 84–1258–CIV–DAVIS

21. *Gregory Mantz, Netta Mantz and Harold Mantz v. Eastern Air Lines,* Case No. 85–0654–CIV–NES-BITT

22. *Netta Mantz, Harold Mantz and Gregory Mantz v. Eastern Air Lines,* Case No. 85–0653–CIV–HAS-TINGS

23. *Alfred Goldberg and Shirley Goldberg v. Eastern,* Case No. 84–1956–CIV–DAVIS

24. *Salim Khoury and Deborah Khoury, his wife v. Eastern,* Case No. 84–0923–CIV–KEHOE

B. *Cases Removed Pursuant to the Federal Courts' Diversity Jurisdiction.*

The following two cases were removed from the Court of Pleas of Allegheny County, Pennsylvania to the United States District Court for the Western District of Pennsylvania pursuant to the federal courts' diversity jurisdiction; the cases were then transferred to this Court as ordered by the Judicial Panel on Multidistrict Litigation:

1. *Gerry Ash Seif v. Eastern Air Lines,* Case No. 84–0835–CIV–HAS-TINGS

2. *Susan Rooney and William Rooney,* Case No. 84–0836–CIV–DAVIS

For the reasons set forth below, it is hereby

ORDERED AND ADJUDGED that the above two enumerated actions are DISMISSED with prejudice.

██ The above two actions were transferred to this court pursuant to 28 U.S.C. § 1407.· In cases of multidistrict litigation transfers,· the transferee court ordinarily will apply the substantive law of the transferor forum, including that forum's choice of law rules. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts,* 78 F.R.D. 575, 584 (1977). *See also* Manual for Complex Litigation, Second, § 33.23. Thus, this Court, sitting as a transferee court, is obligated to apply the state law that would have been applied by the United States District Court for the Western District of Pennsylvania, the transferor court, had a transfer not occurred.

██ A federal district court's choice-of-law decision is governed by the choice-of-law rules of the forum state. *Klaxon v.*

*Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, the United States District Court for the Western District of Pennsylvania, which was sitting in diversity, would have been obligated to follow Pennsylvania's choice-of-law rules.

In *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court adopted a flexible choice-of-law rule which permits an "analysis of the policies and interests underlying the particular issue before the court" and a determination of which jurisdiction is most intimately concerned with the outcome of the litigation. *Id.* at 21, 22 203 A.2d 796.

*American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.*, 752 F.2d 71, 74 (3d Cir.1985).

■ Pennsylvania's "policy, interests, and contacts test," *id.* at 75, requires application of the substantive law of Florida to the present controversy. In support of this conclusion, the Court notes that the vast majority of the plaintiffs who have filed suit in this multidistrict action purchased or caused to be purchased their tickets for Eastern Flight No. 855 from Miami International Airport located in Dade County, Florida. The subject flight departed from Miami International Airport. After the engine trouble occurred, apparently somewhere between Miami and the Bahamas, the subject aircraft turned around and landed in Miami, Florida. In sum, Florida appears to be the state with the most significant interests and involvement with the subject litigation.

The sufficiency of the complaints will, therefore, be determined by Florida law. For the reasons set forth above in the "Discussion" section of this Order, this Court concludes that the *Seif* and *Rooney* complaints have failed to state claims upon which relief may be granted. Both complaints contain no factual allegations of a cognizable physical injury, nor do they contain sufficient factual allegations of intentional or reckless misconduct. Dismissal is, therefore, appropriate.

## C. *Cases Alleging Physical Impact and/or Injury.*

The following two cases, both removed to this Court pursuant to the federal courts' treaty jurisdiction, contain allegations of physical impact and/or injury:

1. *Manuel Crespo and Norma Crespo v. Eastern Air Lines, Inc.*, Case No. 84–0502–CIV–DAVIS

2. *Kevin King, Ben King, and Mary Jo King v. Eastern Air Lines, Inc.*, Case No. 84–1259–CIV–GONZALEZ

It is hereby

■ ORDERED AND ADJUDGED that Case No. 84–0502–CIV–DAVIS, *Manuel Crespo and Norma Crespo v. Eastern Air Lines, Inc.*, is DISMISSED with prejudice. As set forth in the "Discussion" section of this Order, absent a sufficient factual allegation of physical injury, the Plaintiffs have stated no cause of action. Here, Plaintiffs asserted in their original Complaint that they suffered "physical impact and injury, severe and permanent mental pain and anguish, fright, distress and an inability to lead a normal life." A careful reading of the Complaint, however, reveals no factual allegations in support of the claim of physical impact or injury. While it is true that Plaintiffs need not plead each and every element to state a cause of action, it is necessary that Plaintiffs plead facts sufficient to put the Defendant on notice of the charges against which it must defend. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Plaintiffs, here, have failed to sufficiently allege facts concerning the alleged physical impact or injury. The Complaint is, therefore, dismissed.

It is further

■ ORDERED AND ADJUDGED that Defendant's Motion for Judgment on the Pleadings is DENIED in Case No. 84–1259–CIV–GONZALEZ, *Kevin King, Ben King and Mary Jo King v. Eastern Air Lines, Inc.* In their original Complaint, Plaintiffs alleged that "[a]s a direct and proximate result of defendant, EASTERN AIRLINE INC.'s breach of contract,

MARY JO KING's pregnancy was adversely affected and BEN KING was born prematurely. As a consequence of his premature birth, BEN KING was injured in and about his body and extremeties, suffered pain therefrom, suffered physical handicap disability and disfigurement and loss of enjoyment of a normal life." The Court finds that these factual allegations are sufficient to withstand a motion for judgment on the pleadings. The Defendant's motion is therefore denied in Case No. 84–1259–CIV–GONZALEZ. That case is hereby transferred back to the calendar of the Honorable Jose A. Gonzalez. All further documents filed in the *King* case are to bear the following number and initials: CASE NO. 84–1259–CIV–GONZALEZ.