## L. L. WATSON, Appellant, v. W. A. DILTS.

**Appeal:** REVIEW OF VERDICT. The correctness of a ruling directing a verdict, can only be determined from an examination of the entire evidence.

**Filing translation of reporter's notes.** The law does not fix the time in which a translation of the reporter's notes shall be filed in a law action.

**Abstract:** OBJECTION. Failure to make timely objection that an abstract does not contain all of the material evidence, will be treated as a waiver of the objection and an acceptance of the abstract as filed.

Trespass:  EVIDENCE.  Under the evidence in the case, it is held that
4   defendant, in going to the home of plaintiff to make a social call on
    a lady boarder, was a trespasser.

*Appeal from Henry District Court.*— HON. W. S. WITHROW,
Judge.

FRIDAY, JUNE 10, 1904.

SUIT to recover damages for a personal injury. There
was a directed verdict for the defendant. The plaintiff ap-
peals.— *Reversed.*

*Palmer & Kopp,* for appellant.

*McCoid & Tinley,* for appellee.

SHERWIN, J.— The original abstract was served Septem-
ber 3, 1903, and filed the next day. On the 28th day of the
same month the appellee filed a denial of the appellant's ab-
stract, but its terms were too general to constitute the denial
required by the rules. On the 22d day of April, 1904, the
appellee filed a motion to strike all of the evidence contained
in the abstract, because no translation of the notes was filed
with the clerk of the district court; and this motion was sub-
mitted with the case. The trial court having directed a verdict
1. REVIEW OF   for the defendant, and this being one of the
DIRECTED
VERDICT.      grounds of the appellant's complaint, the cor-
rectness of its action must be determined by an examination
of the entire evidence material to the issue involved. *Kitzman
v. Kitzman,* 115 Iowa, 227.

Had the appellee's denial pointed out specifically the fail-
ure in this respect, there would have been ample time for the
2. FILING TRANS-   filing of such translation without delaying the
LATION OF
REPORTER'S      submission of the case, and this could have been
NOTES.
done because the law does not fix the time within which such
translation shall be filed in law actions. *Slone v. Berlin,* 88
Iowa, 205; *Hammond v. Wolf,* 78 Iowa, 227.

If the appellee is not satisfied with the appellant's abstract because all of the material evidence is not contained therein,

**3. ABSTRACT: objection.** he should make timely objection thereto, so that the submission of the cause will not be delayed, and, if he fails to do so, such failure will be treated as a waiver, and as an acceptance of the abstract which has been made and filed. We think the motion herein should be overruled for this reason.

This is the second appeal in this case. On the first we held that the petition stated a cause of action, and, as the is-

**4. TRESPASS: evidence.** sue which was finally tried is in all material respects as stated in the former opinion, it will not be repeated. *Watson v. Dilts,* 116 Iowa, 249. At the time of the alleged wrongful act a young lady school teacher was lodging and boarding at the plaintiff's home, where she had been for several months, occupying an upper room in the house. The defendant is a physician and surgeon, and on the night of the transaction under consideration he went to the plaintiff's home, reaching there at some time between 9 o'clock and midnight, was admitted to the house through the parlor door by the young lady teacher, and went with her to her room. The night was light, and the appellee's approach to the house and his arrival at the door was seen by the plaintiff and her husband, who were up at the time, and looking out of the window. There was a conflict in the evidence as to the alarm given at the door by the doctor; the plaintiff and her husband testifying that there was nothing more than a scratch on the door, and the appellee and the teacher testifying that there were two or three knocks on the door before she went downstairs and admitted him. The appellee's approach to the house and to the door does not appear to have been stealthy, or with any attempt at concealment. The door was locked at the time, as the plaintiff and her husband knew, and the evidence conclusively shows that the teacher took a light with her when she went down to admit the appellee, and that she unlocked the door, and in fact admitted him. The plaintiff

and her husband heard him enter the house, and the creaking of the stairs as he and the teacher went up them. Watson immediately followed with a gun, and found the two in the teacher's room, whereupon he called his wife, and she went to the room. There is a sharp conflict in the evidence as to the condition of things in the room when the husband and wife appeared upon the scene. That the young lady was apparelled in purple and fine raiment in anticipation of a visit, professional or otherwise, from the appellee, is practically undisputed. The plaintiff and her husband testified, however, that the appellee, in analogy to the ostrich, had his head and a part of his body hidden under the bed, while the other occupants of the room testified that they were both standing in the center of the room. The situation in the room, however, is only material on the question of the appellee's purpose there and in its bearing upon the manner of his entrance thereto. A letter from the teacher to the appellee was put in evidence, which tended to show the nature of his visit. It is as follows: "Dr. W. A. Dilts: Please call at Watson's Friday evening or Saturday. I am almost sick. Please say nothing about it, as mother always worries." There is no evidence tending to show that this letter was manufactured for the purposes of the trial, but, on the other hand, the circumstances support the contention that it was sent to and received by the appellee, and that he went to the plaintiff's house in response thereto. But, if this be accepted as true, it does not necessarily follow that the appellee was not a trespasser when he entered the house and went to the teacher's room. There was evidence that the teacher had not complained of illness, or said anything about the necessity of calling a physician. That a boarder and lodger may have an implied license to receive friends upon the premises for proper purposes, and to have a physician enter in case of illness, we do not doubt. But there can be no implied right to enter for immoral purposes, and, if the entry of the appellee was in fact for such purpose, it would constitute a trespass, if without the consent of the

owner; but, on the other hand, if he went to the house for the sole purpose of treating the teacher in a strictly professional capacity, he ought not to be held a trespasser. If the letter was a mere pretense, and the appellee so understood it, as the evidence tended to show that he did, and if he went to the upper room for the purpose of having sexual intercourse with the teacher, her act in admitting him and his entry were both without license, and he was a trespasser. An implied license to enter the premises of another contemplates an entry only in the usual way, and at a reasonable time. An entry at midnight for the sole purpose of paying a social visit is hardly the proper thing in rural communities.

On the entire record we are of the opinion that the case should have gone to the jury. The judgment is therefore REVERSED.