ELLA BLAKELEY, Appellant, v. ESTATE OF MARTIN SHORTAL et al., Appellees.

No. 46690.

OCTOBER 16, 1945.

Ralph H. Munro, of Fairfield, for appellant.

Richard C. Leggett, of Fairfield, for appellees.

MANTZ, J.—This action is based upon a claim in probate filed by Ella Blakeley against the estate of Martin Shortal,

deceased, wherein damages are claimed for a shock which claimant alleges she suffered when she attempted to enter her home and found therein Martin Shortal, a neighbor, lying on the kitchen floor, with blood on the floor and other parts of the room. Her claim is that Shortal, by his own willful act, suicided in the kitchen of her home, and that when she saw the body and the blood she suffered a physical shock to her nerves and that this condition has continued since that time.

The administrators of the Shortal estate denied the claim generally, admitted the finding of the body in claimant's kitchen, but specifically denied that claimant suffered any injury or damage because of the finding of the body.

When claimant rested, upon motion of the administrators of the estate, the jury, by direction of the court, returned a verdict for such defendants. Claimant appealed.

I. There is little dispute in the essential facts. For about four years claimant and her husband had lived close neighbors, on adjoining farms in Jefferson County, Iowa, to Martin Shortal and wife. About September 1943 Shortal and his wife separated, the latter securing a divorce. Shortal had a sale about March 1st following, and the property was divided. Claimant and her family remained on good terms with Shortal. Shortal was fifty years of age. On March 3, 1944, at about six p. m. Shortal came to the Blakeley home. It was raining hard. Shortal was soaking wet and his clothes were muddy. He wanted to stay all night. Some of his wet and muddy clothing was removed and hung up to dry and he was provided with a bed. In the morning he ate breakfast and remained in the house visiting with claimant and her husband. He asked for a pencil and some paper to do some figuring, saying he thought that in the division of his property he had been beaten out of some money. About noon claimant and her husband went to town to trade, leaving Shortal sitting at the table figuring. They came home about four p. m. that day and claimant started to enter the kitchen of the home. She pushed the door partly open and there saw Shortal lying on the floor with pools of blood about him. When claimant saw the body and the blood she exclaimed, "Oh my God, Martin has killed hisself!" She

started falling but her husband behind her prevented her fall. They at once drove to a neighbor's and called the sheriff and coroner. These officials came an hour or so later and upon entering the house found Martin Shortal lying on the floor of the kitchen. He was then dead. His throat had been cut and there was a considerable quantity of blood on the floor and about the room. By his side was a skinning knife which belonged to claimant's son. It had blood on it. When claimant left for town this knife was in a holder hanging on the kitchen wall.

Claimant was then taken to a physician, who pronounced her condition as one of shock to the nerves, caused by her discovery of the body. Since that time she finds difficulty in sleeping, is nervous and restless. She did not return to the home for some time.

Appellees' motion for a directed verdict in essence is that appellant's evidence failed to sustain the allegation of her claim; that if Shortal did commit suicide the evidence failed to show that such act was willful, from which a shock could have been suffered and was to be reasonably anticipated as a natural consequence of such act: and that, as a whole, the evidence failed to show a situation wherein the jury could find damages for the appellant.

The court, in ruling on the motion, stated in part:

"The nub of that proposition is the query whether or not a cause of action has been alleged and proven. The Court is now inclined to believe there has been no cause of action alleged nor proven. * * * it appears to the Court that no cause of action existed at the time of the death of this wrongdoer, and therefore, no cause of action to survive. It is a general rule that a cause of action for tort does not arise, or is not complete, until there is an injury. The mere fact that Martin Shortal committed suicide in the home of this claimant was not the cause of action claimed in this case, but it was the injury to the claimant which she claims thereafter resulted. * * * Therefore, the cause of action did not come into existence until after, as she claims, she saw the body and suffered as a result of shock therefrom. The cause of action therefore was

not complete until after the death of Martin Shortal. If it had existed before his death, it would have survived. The Court feels that there was no cause of action in existence at his death, therefore there could be no survival thereof.''

II. The correctness of the court's holding that no cause of action was in existence at the time of Shortal's death, and therefore there could be no survival thereof, is challenged by this appeal. We hold that the court erred in such ruling.

The ruling involves an interpretation of sections 10957 and 10959 of the Code of 1939, which provide as follows:

''10957 Actions survive. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.

''10959 Actions by or against legal representatives—substitution. Any action contemplated in sections 10957 and 10958 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. If such is continued against the legal representative of the defendant, a notice shall be served on him as in case of original notice.''

Our statute on survival of actions, section 10957, provides: ''All causes of action shall survive * * * .''

This statute, although in derogation of the common law, should be liberally construed. Wood v. Wood, 136 Iowa 128, 113 N. W. 492, 12 L. R. A., N. S., 891, 125 Am. St. Rep. 223; section 64, Iowa Code, 1939; 1 C. J. S., Abatement and Revival, section 133.

The term ''cause of action'' has sometimes been held to mean, '' 'the act on the part of the defendant which gives the plaintiff his cause of complaint.' '' Williamson v. Chicago, R. I. & P. Ry. Co., 84 Iowa 583, 588, 51 N. W. 60, 62. See, also, 1 C. J. S., Actions, section 8.

This court has said:

''In an action to recover damages the cause of action is not on the one hand the damage suffered by plaintiff, nor on

the other hand the mere evidentiary facts showing defendant's wrong; but it is the wrong itself done by defendant to plaintiff, that is the breach of duty by the defendant to the plaintiff, whether it be a duty arising out of contract or of tort." Cahill v. Illinois Cent. R. Co., 137 Iowa 577, 580, 115 N. W. 216, 217. (Citing cases.)

If Martin Shortal willfully set in motion a cause that after his death proximately operated to the damage of appellant, to whom he owed a duty, his estate should not be permitted to escape liability. For the purpose of the survival statute, the cause of action arose before and survived after his death. The damage, when it happened, related back to the willful act of the decedent.

 III. This brings us to the question whether a cause of action was pleaded or proven, because of the fact that the injury and damages were due to fright, in the absence of other physical injury. The rule in such cases is well stated in Holdorf v. Holdorf, 185 Iowa 838, 841, 169 N. W. 737, 738, as follows:

"It is, however, contended by counsel for appellee that no physical injury was inflicted upon plaintiff, and that, if she suffered damages, it was due to fright alone, for which no recovery can be had. The authorities are not in harmony upon this point, and it has often been held that no recovery will be permitted for damages resulting solely from fright caused by the negligence of another, in the absence of some physical injury. * * * The rule, however, denying liability for injuries resulting from fright caused by negligence, where no physical injury is shown, cannot be invoked where it *is* shown that the fright was due to a willful act." (Italics supplied.)

To the same effect, see Watson v. Dilts, 116 Iowa 249, 89 N. W. 1068, 57 L. R. A. 559, 93 Am. St. Rep. 239; Watson v. Dilts, 124 Iowa 344, 100 N. W. 50.

Hence our decision rests upon whether or not the court was warranted in holding as a matter of law that the evidence failed to show that Shortal's act was willful. We hold that the facts presented a jury question on this issue.

In State ex rel. Barker v. Meek, 148 Iowa 671, 673, 127 N. W. 1023, 1024, 31 L. R. A., N. S., 566, Ann. Cas. 1912C, 1075, this court, in discussing the term, speaking through Weaver, J., said:

"The word 'willful,' like most other words in our language, is of somewhat varied signification according to its context and the nature of the subject under discussion or treatment. Frequently, it is used as nearly or quite synonymous with 'voluntary' or 'intentional' * * * ."

A willful wrong may be committed without any intention to injure anyone. A good statement of the rule is contained in Southern Ry. Co. v. McNeeley, 44 Ind. App. 126, 131, 88 N. E. 710, 712:

" 'The authorities, from the earliest years of the common law, recognize the rule that there may be a wilful wrong without a direct design to do harm. This principle has been applied to furious driving, to collisions between vessels, to the taking of unruly animals into crowds, to carelessly laying out poison for rats, to want of caution towards drunken persons and to the careless casting of logs and the like upon highways.' [Palmer v. Chicago, St. L. & P. R. Co., 112 Ind. 250, 255, 14 N. E. 70.] * * * 'To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of.' " [Louisville, N. A. & C. R. Co. v. Bryan, 107 Ind. 51, 53, 7 N. E. 807.]

In the case of Watson v. Dilts, supra, at page 253 of 116 Iowa, page 1069 of 89 N. W., 57 L. R. A. 559, 93 Am. St. Rep. 239, we held:

"It is undoubtedly true that the door should not be thrown wide open for trumped-up claims on account of injuries resulting from fright, and we do not intend to so open it in this case. Each case must, of necessity, depend on its own facts."

We adhere to the foregoing pronouncement. Each case must, of necessity, depend on its own facts. The application

of the rule herein is limited strictly to the facts presented by the record. There is in the record ample evidence to show that in committing the act of suicide Shortal was a willful wrongdoer; that he failed to act properly in the premises; and that when appellant sought to re-enter her home, the gory and ghastly sight confronting her caused a shock, and that such shock was the natural, though not the necessary or inevitable, result of his wrongful act. We hold that it was for the jury to determine whether or not Shortal's act was willful. If they should so determine, then, under the rule announced in Holdorf v. Holdorf, supra, recovery could be had notwithstanding the fact that appellant's injury was caused by fright.

IV. Did the court err in sustaining appellees' objection to the report of the coroner? Following the death of Shortal the coroner came and made an investigation. No coroner's jury was called and no inquest was had. The coroner made and filed a report pursuant to section 5214 of the Code. The coroner as a witness was not permitted to state his conclusions as to what had transpired in appellant's home. His report was offered and upon objection was rejected as evidence. This ruling of the court is urged as error. Without setting out the cases cited by the parties, we think the ruling of the court was correct. In Wilkinson v. National Life Assn., 203 Iowa 960, 211 N. W. 238, this court reviewed various cases in which there was an issue as to the admissibility of the coroner's report. Morling, J., made a rather comprehensive analysis of such cases. The court held that such report was not admissible as bearing on the cause of death, whether suicide or otherwise. The holding of that case was followed in the case of Morton v. Equitable L. Ins. Co., 218 Iowa 846, 254 N. W. 325, 96 A. L. R. 315. We find no error here.

We hold that the trial court erred in sustaining appellees' motion for a directed verdict and for that reason the case is reversed.—Reversed and remanded.

MILLER, C. J., and OLIVER, BLISS, GARFIELD, WENNERSTRUM, SMITH, and MULRONEY, JJ., concur.

HALE, J., not sitting.