536 So.2d 1023 (1987)
Charles KING, Appellant,
v.
EASTERN AIRLINES, INC., Appellee.
No. 86-938.
District Court of Appeal of Florida, Third District.
December 15, 1987.
Amended on Denial of Rehearing October 25, 1988.
On Rehearing October 25, 1988.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel Eaton, for appellant.
Thornton, David & Murray and Kathleen M. O'Connor, for appellee.
Before BARKDULL, HENDRY and BASKIN, JJ.
On Rehearing En Banc October 25, 1988.
*1024 BASKIN, Judge.
On May 5, 1983, Eastern Airlines' Flight # 855 departed from Miami International Airport, bound for Nassau, in the Bahamas. En route to Nassau, one of the airplane's three jet engines failed. Shortly after the flight crew turned the plane around and headed back to Miami, the second and third engines failed. The airplane began losing altitude, and the passengers were told that the crew would ditch the airplane in the Atlantic Ocean. After an extended period, during which the airplane descended without power, the flight crew restarted an engine and landed the airplane safely at Miami International Airport.
Appellant Charles King, and other passengers not parties to this appeal, sued Eastern Airlines for damages allegedly incurred as a result of the airline's intentional or reckless infliction of mental distress,[1] and for damages arising under the Warsaw Convention.[2] The lawsuit was removed to the United States District Court for the Southern District of Florida, but was remanded to the Circuit Court. After remand, King filed an amended complaint alleging, among other matters, that Eastern's maintenance personnel had failed to install the required oil seals or "O-rings" necessary to prevent oil leaks; that Eastern's records reveal that its aircraft had experienced a dozen prior engine failures stemming from the absence of O-rings; that Eastern knowingly failed to institute "appropriate" procedures to correct the problem; and that Eastern's "entire want of care or attention to duty and great indifference to persons, property and rights of the plaintiff implies such wantonness, willfulness, and malice as would justify punitive damages." Because related cases were pending in the United States District Court, the state trial judge stayed King's action.
The related federal actions culminated in the entry of judgments on the pleadings in Eastern's favor based on a determination that the complaints, identical or similar to the one filed by King in the case before us, failed to state a cause of action against Eastern. In Re Eastern Airlines, Inc. Engine Failure, Miami Int'l Airport on May 5, 1983, 629 F. Supp. 307 (S.D.Fla. 1986). Citing the federal court ruling, Eastern filed a motion for judgment on the pleadings in King's state court action. The trial court granted the motion, and entered a final judgment in favor of Eastern. King instituted this appeal, in which he contends that Count III of the amended complaint, predicated on intentional infliction of mental distress resulting in severe and permanent mental pain and anguish, medical expenses, and lost earnings, and Count IV, arising under the Warsaw Convention, allege causes of action justifying the recovery of damages. We agree that Count III states a cause of action but hold that Count IV does not. We address the counts in turn.

COUNT III  EASTERN'S ENTIRE WANT OF CARE
In Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985), the supreme court recognized the availability of an independent cause of action for intentional infliction of emotional distress unaccompanied by physical injury or impact. The court adopted the Restatement (Second) of Torts, § 46 (1965):
§ 46. Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly *1025 causes severe emotional distress to another is subject to liabiilty for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (Emphasis supplied.)
According to section 46, the tort may result from intentional or reckless conduct. The court defined intentional infliction of emotional distress in accordance with the comments to the text:
d. Extreme and outrageous conduct
... . . It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
McCarson, 467 So.2d at 278-79.
King posits that Eastern's conduct was "outrageous." Although he acknowledges that the failure to install an o-ring may constitute merely negligent conduct, in his brief he maintains that the airline's failure to correct its maintenance procedures after it experienced twelve engine failures can be characterized only as "behavior so reckless and outrageous, given the life-threatening nature of the risk involved, that it is the equivalent of an intentional disregard of the safety of the airline's passengers." Whether conduct is so extreme as to permit recovery is initially a question for the court. See note 7. We agree with King that the allegations state a cause of action.[3]
King persuades us that Eastern's knowledge of the enormous risk to the many passengers for whom it was responsible under its special relationship as common carrier renders its failure to take appropriate, easily accomplished corrective action so "outrageous" that it constitutes a cause of action under the law. See Dorsey v. Honda Motor Co. Ltd., 655 F.2d 650 (car manufacturer's knowing refusal to accept recommendations for eliminating risks, constituted wantonness, willfulness or reckless indifference to the rights of others), modified, 670 F.2d 21 (5th Cir.1982), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); Piper Aircraft Corp. v. Coulter, 426 So.2d 1108 (Fla. 4th DCA) (failure to act in face of known substantial danger to lives of aircraft passengers sufficient to justify punitive damages), review denied, 436 So.2d 100 (Fla. 1983); American Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981) (manufacturer who is aware of defect but chooses not to seek safer alternative may be awarded punitive damages), review denied, 415 So.2d 1359 (Fla. 1982); see also Ciamar Marcy, Inc. v. Monteiro Da Costa, 508 So.2d 1282 (Fla. 3d DCA 1987) (repossession of property without inquiry as to whether payments were made justifies punitive damage award).
King has directed our attention to Florida cases which recognize an action for intentional infliction of emotional distress based on facts far less egregious than those in this case. See, e.g., Smith v. Telophase Nat'l. Cremation Soc'y, 471 So.2d 163 (Fla. 2d DCA 1985) (intentional emotional distress recognized where cremation society failed to dispose of decedent's ashes in accordance with specific instructions); Dominguez v. Equitable Life Assurance Soc'y, 438 So.2d 58 (Fla. 3d DCA 1983) (damages for mental distress held recoverable where insurance company falsely accused injured insured of fabricating claim); Kirkpatrick v. Zitz, 401 So.2d 850 (Fla. 1st DCA) (recovery allowed skunk-bite victim for intentional infliction of emotional distress where pet-store owner withheld information that he sold skunk and that animal was unavailable for rabies test), dismissed, *1026 411 So.2d 385 (Fla. 1981); Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA) (debtor has cause of action for intentional infliction of emotional distress where credit company falsely told debtor's mother that grandchildren were in serious auto accident), cert. dismissed, 379 So.2d 204 (Fla. 1979) [based on authority of Restatement (Second) of Torts, § 46]; Knowles Animal Hosp., Inc. v. Wills, 360 So.2d 37 (Fla. 3d DCA 1978) (recovery for dog owner's mental suffering allowed where veterinarian left dog on heating pad and dog was severely burned), cert. denied, 368 So.2d 1369 (Fla. 1979); Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965) (six-year old child may bring action for intentional infliction of emotional distress where adult made allegedly false statements indicating that the child's mother committed adultery) (based on authority of Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950)). These cases allow recovery under circumstances less extreme than the frightening exposure to an imminent crash at sea and the actual risk of death to which King and other passengers were subjected by Eastern's allegedly reckless conduct.
Of course, Eastern Airlines cites other authorities in support of affirmance. Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla. 1986); Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla. 1986); and White Constr. Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984), do not persuade us. In Dupont, the supreme court compared intentional misconduct and recklessness. The court held that a driver's knowing operation of a loading truck with malfunctioning brakes did not amount to sufficient recklessness to justify punitive damages. Unlike Eastern Airlines, whose twelve previous engine failures foretold with substantial certainty the risk of injury or death, the truck driver in Dupont had no reason to "realize that there [was] a strong probability that harm [would] result." Restatement (Second) of Torts, § 500, Comment f (1965).[4]Wolmer is inapposite; it turns on lack of actual knowledge. Fisher lends no support. It deals with an employer's intentional tort in ordering an employee to work inside a pipe which the employer knew was filled with dangerous gas; the court did not consider whether the conduct constituted recklessness. See note 4. Here, Eastern's alleged history of indifference to its maintenance procedures could, if proved, demonstrate that Eastern's conduct was outrageous.
In its final argument directed to this point, Eastern cautions us that even if we decide that Count III of the amended complaint states a cause of action, King's remedy is limited by the Warsaw Convention.[5] We disagree. Although the general provisions of the Warsaw Convention set forth the criteria for liability of international air carriers along with certain limitations of liability, Article 25 of the Warsaw Convention specifically provides that a carrier may not avail itself of the provisions of the Convention which exclude or limit liability if the carrier engages in "willful misconduct" or its equivalent.[6]Butler v. Aero-Mexico, 774 F.2d 429 (11th Cir.1985). Courts have construed "willful misconduct" *1027 as "the intentional performance of an act with knowledge that the... act will probably result in injury or damage"; or as "reckless disregard of the consequences"; or as "a deliberate purpose not to discharge some duty necessary to safety." Butler, 774 F.2d at 430, quoting Koninklijke Luchtvaart Maatschappij N.V. v. Tuller, 292 F.2d 775, 778-79, cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). Because the conduct King alleges is exempt from Article 25 liability limitations, the Warsaw Convention does not preclude his claim. We therefore conclude that Count III alleges a cause of action for conduct which "may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts, § 46, Comment h (1965).[7] We reverse the judgment as to Count III and reinstate King's cause of action for infliction of emotional distress.

COUNT IV  WARSAW CONVENTION CLAIM
King contends that Count IV of the amended complaint states a cause of action under Article 17 of the Warsaw Convention for the recovery of damages resulting from mental distress. The relevant portion of Article 17 provides that "[t]he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger... ." In Re Eastern, 629 F. Supp. at 313. The original French text states: "Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur... ." In Re Eastern, 629 F. Supp. at 313, quoting Air France v. Saks, 470 U.S. 392, 397 n. 2, 105 S.Ct. 1338, 1341 n. 2, 84 L.Ed.2d 289, 295 n. 2 (1985) (emphasis omitted). The crux of the issue is whether the phrase "ou de toute autre lesion corporelle" includes mental distress unaccompanied by bodily injury. Although courts have arrived at different conclusions, compare Burnett v. Trans World Airlines, Inc., 368 F. Supp. 1152 (D.N.M. 1973); In Re Eastern (excluding recovery for emotional distress in the absence of physical injury); with Krystal v. British Overseas Airways Corp., 403 F. Supp. 1322 (C.D.Cal. 1975); Husserl v. Swiss Air Transport Co., Ltd., 388 F. Supp. 1238 (S.D.N.Y. 1975); Palagonia v. Trans World Airlines, 110 Misc.2d 478, 442 N.Y.S.2d 670 (N.Y.Sup. 1978) (authorizing recovery for mental distress), the court's reasoning in In Re Eastern convinces us that mental distress suffered without accompanying physical injury is not compensable under the Warsaw Convention.
In Saks, the Supreme Court held that because French is the official language of the Warsaw Convention, the French legal meaning of Convention terms governs. The Burnett court employed the French legal meaning of the terms of the Convention and concluded that "the Convention intended to narrow the otherwise broad scope of liability ... and preclude recovery for mental anguish alone." Burnett, 368 F. Supp. at 1157. The court explained:
[t]he controlling phrase for the purpose of interpretation would seem to be "ou de toute autre lesion corporelle" (or any other bodily injury) for both the terms mort (death) and blessure (wound) are by necessity incorporated within it. As is done in American law, French law distinguishes sharply between bodily injury (lesion corporelle) and mental injury (lesion mentale). Lesion corporelle has been defined in a leading work to mean "an infringement of physical integrity (l'atteinte a l'integrite physique)." The definition gives not the slightest indication that mental injuries are to be included within its domain. An examination of the meaning of the words lesion and mentale (as defined in Cassell's New French-English, English-French Dictionary, *1028 1962) reveals the meaning of the phrase "lesion mentale" to be mental wrong or injury. The two phrases appear to be mutually exclusive and therefore, sound construction compels the court to attribute to "lesion corporelle" its normal import only, excluding mental injury. (Footnote omitted.)
Burnett, 368 F. Supp. at 1156. The In Re Eastern court was skeptical of those cases[8] which do not use the French interpretation of the treaty. In Re Eastern, 629 F. Supp. at 313. We follow its example. Although we are aware that Palagonia views the French legal meaning of the phrase "lesion corporelle" as including a separate cause of action for emotional distress, we are reluctant to assign great weight to its decision for two reasons. First, the Palagonia opinion reveals that the experts were not in agreement; second, unlike the Burnett court, the Palagonia court failed to examine records of the Convention's drafts and negotiations. See Saks, 470 U.S. at 400, 105 S.Ct. at 1343, 84 L.Ed. at 297; In Re Eastern, 629 F. Supp. at 314. We therefore conclude that emotional distress alone is not compensable under the Warsaw Convention.
Affirmed in part; reversed in part; remanded.
HENDRY, J., concurs.
BARKDULL, Judge, dissenting.
I respectfully dissent from so much of the majority opinion that reverses as to Count III, upon the reasoning announced by United States District Judge Edward B. Davis, in the federal proceeding (In Re Eastern Airlines, Inc. Engine Failure, Miami Int'l Airport on May 5, 1983, 629 F. Supp. 307 (S.D.Fla. 1986) as to the same count, which was then pending before him. Said order of dismissal as relates to Count III reads as follows:
"COUNT III-EASTERN'S ENTIRE WANT OF CARE
[3] In Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla. 1950), the Florida Supreme Court stated:
We do not feel constrained to extend [the rule barring recovery for mental pain and anguish unconnected with physical injury] to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages.
In the previously-cited case of Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985), a negligence case, the Florida Supreme Court noted that its `ruling does not disturb any prior decisions allowing [damages for psychological trauma] in intentional tort cases.' Brown, 468 So.2d at 904 n.[*]. Plaintiffs, therefore, argue that Count III, entitled `Entire Want of Care', states a cause of action under Kirksey. Defendant counters that Kirksey did not establish an independent cause of action for `entire want of care.' Upon review of the relevant case law, this Court concludes, as Defendants contends, that Kirksey did not establish an independent cause of action in tort.
When Kirksey was decided, Florida had not yet recognized an independent cause of action for intentional infliction of emotional distress. Generally, recovery for emotional distress alone was barred. In Kirksey, however, the Florida Supreme Court recognized for the first time, not a new tort, but, that damages for emotional distress alone could be recovered if the defendant was guilty of another recognized intentional tort.[3] Later Florida Supreme Court opinions support this interpretation of Kirksey. See e.g., Slocum v. Food Fair Stores of Florida, 100 So.2d 396 (Fla. 1958). In Slocum, the Supreme Court of Florida stated that the Kirksey decision `would apparently allow recovery for mental suffering, even absent physical consequences, inflicted in the course of other *1029 intentional or malicious tort... .' Id. at 395 (emphasis added).
This Court concludes that Count III can withstand a motion to dismiss for failure to state a cause of action only if facts are alleged which, assuming their truth, would put the Defendant on notice of an independently recognized intentional tort.
In Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277 (Fla. 1985), the Florida Supreme Court recognized for the first time the tort of intentional infliction of emotional distress. Section 46 of the Restatement (Second) of Torts (1965) has been adopted in Florida as the appropriate definition of the tort. Id. Section 46 defines the tort of intentional infliction of mental distress as follows:
§ 46. Outrageous Conduct Causing Severe Emotional Distress
... One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
Restatement (Second) of Torts, § 46 (1965). To state a cause of action under this definition, it is necessary that Plaintiffs allege conduct `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' Metropolitan Life Insurance Co., 467 So.2d at 279.
`It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' Restatement (Second) of Torts § 46, comment h (1965). In the instant suit, Count III realleges the previous counts for breach of contract and negligence and alleges that EASTERN acted with an "entire want of care" or that the subject incident was caused by the `outrageous and willful misconduct' of EASTERN. The facts alleged in support of these claims include EASTERN's alleged failure to properly inspect, maintain, and operate its aircraft. More particularly, it is alleged that EASTERN's records reveal at least one dozen prior instances of engine failure due to missing `O-rings', yet, EASTERN failed to cure the problem.
This last allegation is, perhaps, the Plaintiffs' strongest attempt to allege some type of scienter on the part of EASTERN. The Court finds, however, that the allegations contained in the Complaints, assuming their truth, do not support the contention that EASTERN AIRLINES acted `intentionally or recklessly' as required to state a cause of action for intentional infliction of emotional distress. There are no facts alleged to support the claim that EASTERN is guilty of `outrageous and willful misconduct.'
It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
Restatement (Second) or Torts, § 46, Comment d (1965) (cited in Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985).
This Court concludes that Plaintiffs have failed to state a cause of action under Count III, the intentional tort count."
[3] In Kirksey, the court permitted damages for mental pain and anguish, finding that the defendant was guilty of the separate tortious act of "tortious interference with rights involving *1030 dead human bodies... ." Kirksey v. Jernigan, 45 So.2d at 189.

ON MOTION FOR REHEARING
Before BARKDULL, BASKIN and FERGUSON,[*] JJ.
BASKIN, Judge.
On motion for rehearing, we substitute the following for the treatment of Count IV in the original opinion. The motion for rehearing is otherwise denied.

COUNT IV  WARSAW CONVENTION CLAIM
King contends that Count IV of the amended complaint states a cause of action under Article 17 of the Warsaw Convention[1] for the recovery of damages resulting from mental distress. The relevant portion of Article 17 provides that "[t]he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger... ." In Re Eastern Airlines, Inc. Engine Failure, Miami Int'l Airport on May 5, 1983, 629 F. Supp. 307, 313 (S.D.Fla. 1986). The original French text states: "Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur... ." In Re Eastern, 629 F. Supp. at 313, quoting Air France v. Saks, 470 U.S. 392, 397 n. 2, 105 S.Ct. 1338, 1341 n. 2, 84 L.Ed.2d 289, 295 n. 2 (1985) (emphasis omitted). The crux of the issue is whether the phrase "ou de toute autre lesion corporelle" includes mental distress unaccompanied by bodily injury. Although courts have arrived at different conclusions, compare Burnett v. Trans World Airlines, Inc., 368 F. Supp. 1152 (D.N.M. 1973); In Re Eastern (excluding recovery for emotional distress in the absence of physical injury); with Krystal v. British Overseas Airways Corp., 403 F. Supp. 1322 (C.D.Cal. 1975); Husserl v. Swiss Air Transport Co., Ltd., 388 F. Supp. 1238 (S.D.N.Y. 1975); Palagonia v. Trans World Airlines, 110 Misc.2d 478, 442 N.Y.S.2d 670 (N.Y.Sup. 1978) (authorizing recovery for mental distress), the court's reasoning in In Re Eastern convinces us that mental distress suffered without accompanying physical injury is not compensable under the Warsaw Convention.
In Saks, the Supreme Court held that because French is the official language of the Warsaw Convention, the French legal meaning of Convention terms governs. The Burnett court employed the French legal meaning of the terms of the Convention and concluded that "the Convention intended to narrow the otherwise broad scope of liability ... and preclude recovery for mental anguish alone." Burnett, 368 F. Supp. at 1157. The court explained:
[t]he controlling phrase for the purpose of interpretation would seem to be "ou de toute autre lesion corporelle" (or any other bodily injury) for both the terms mort (death) and blessure (wound) are by necessity incorporated within it. As is done in American law, French law distinguishes sharply between bodily injury (lesion corporelle) and mental injury (lesion mentale). Lesion corporelle has been defined in a leading work to mean "an infringement of physical integrity (l'atteinte a l'integrite physique)." The definition gives not the slightest indication that mental injuries are to be included within its domain. An examination of the meaning of the words lesion and mentale (as defined in Cassell's New French-English, English-French Dictionary, 1962) reveals the meaning of the phrase "lesion mentale" to be mental wrong or injury. The two phrases appear to be mutually exclusive and therefore, sound construction compels the court to attribute to "lesion corporelle" its normal import only, excluding mental injury. (Footnote omitted.)
Burnett, 368 F. Supp. at 1156. The In Re Eastern court was skeptical of those *1031 cases[2] which do not use the French interpretation of the treaty. In Re Eastern, 629 F. Supp. at 313. We follow its example. Although we are aware that Palagonia views the French legal meaning of the phrase "lesion corporelle" as including a separate cause of action for emotional distress, we are reluctant to assign great weight to its decision for two reasons. First, the Palagonia opinion reveals that the experts were not in agreement; second, unlike the Burnett court, the Palagonia court failed to examine records of the Convention's drafts and negotiations. See Saks, 470 U.S. at 400, 105 S.Ct. at 1343, 84 L.Ed.2d at 297; In Re Eastern, 629 F. Supp. at 314. We therefore conclude that emotional distress alone is not compensable under the Warsaw Convention.
Finally, Eastern cautions us that even if we decide that Count III of the amended complaint states a cause of action, Article 17 of the Warsaw Convention preempts all other remedies. Relying, in part, on Rhymes v. Arrow Air, Inc., 636 F. Supp. 737 (S.D.Fla. 1986),[3] Eastern argues that because Article 17 of the Convention precludes recovery for emotional distress alone, King may not assert a cause of action under state law. We disagree. Whereas Eastern is correct in its assertion that the Warsaw Convention creates a cause of action which preempts all local remedies which are inconsistent with the Convention, see Boehringer-Mannheim Diagnostics, Inc. v. Pan Am. World Airways, 737 F.2d 456, 459 (5th Cir.1984) ("Having concluded that the Warsaw Convention creates the controlling cause of action, we further conclude that it preempts state law in the areas covered... .") (emphasis added), appeal dismissed, cert. denied, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985); Highlands Ins. Co. v. Trinidad & Tobago (BWIA Int'l) Airways Corp., 739 F.2d 536, 537 n. 2. (11th Cir.1984) ("[t]he Warsaw Convention preempts local law in areas where it applies."); Rhymes (state law provisions which are not inconsistent with Warsaw Convention are fully enforceable), Eastern is incorrect in concluding that international air travelers may not avail themselves of remedies available under local law when the Warsaw Convention fails to provide a cause of action.
For example, in Abramson v. Japan Airlines Co., Ltd., 739 F.2d 130 (3rd Cir.1984), cert. denied, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985), the plaintiff suffered an in-flight attack caused by a preexisting medical condition which was aggravated by a flight attendant's refusal to provide requested relief. The district court granted a motion for summary judgment, agreeing with the airline that the plaintiff's injuries were not caused by an "accident" within the meaning of Article 17. The Court of Appeals reversed, holding that when the convention does not apply, liability may still exist under common law. When we apply the reasoning of Abramson to the facts under consideration, we conclude that Article 17, which was not intended to apply to emotional distress unaccompanied by physical injury, does not preempt a claim under state law. See Hill v. United Airlines, 550 F. Supp. 1048 (D. Kansas. 1982) (where the Warsaw Convention fails to authorize actions for intentional misrepresentation, *1032 plaintiff is not barred from seeking common law remedy). See also In Re Mexico City Aircrash of October 31, 1979, 708 F.2d 400 (9th Cir.1983) (where flight attendants were not "passengers" as defined by Article 17, and where as a consequence the Warsaw Convention failed to provide a cause of action for their deaths, defendants could rely upon state law).
We therefore hold that unavailability of a cause of action under the Warsaw Convention does not preclude other forms of relief. King may maintain his claim in accordance with state law, but has no cause of action under the Warsaw Convention.
Affirmed in part; reversed in part; remanded.

ON REHEARING EN BANC
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
BASKIN, Judge.
Subsequent to the release of our opinion on December 15, 1987, the court, on its own motion, decided to consider en banc one of the issues addressed in the opinion. The court invited the parties to submit supplemental briefs directed to the issue of whether the facts of this case present a cause of action for the infliction of emotional distress and to present oral argument. The court again concludes that, as to Count III, the trial court erred in granting Eastern Airlines' motion for judgment on the pleadings and in entering final judgment in its favor. In this opinion, however, we state reasons for reversal as to Count III which differ from those stated in the original decision.
On May 5, 1983, Eastern Airlines' Flight # 855 departed from Miami International Airport, bound for Nassau, in the Bahamas. En route to Nassau, one of the airplane's three jet engines failed. Shortly after the flight crew turned the plane around and headed back to Miami, the second and third engines failed. The airplane began losing altitude, and the passengers were told that the crew would ditch the airplane in the Atlantic Ocean. After an extended period, during which the airplane descended without power, the flight crew restarted an engine and landed the airplane safely at Miami International Airport.
Appellant Charles King, and other passengers not parties to this appeal, sued Eastern Airlines for damages allegedly incurred as a result of the airline's intentional or reckless infliction of mental distress,[1] and for damages arising under the Warsaw Convention.[2] The lawsuit was removed to the United States District Court for the Southern District of Florida, but was remanded to the Circuit Court. After remand, King filed an amended complaint alleging, among other matters, that Eastern's maintenance personnel had failed to install the required oil seals or "O-rings" necessary to prevent oil leaks; that Eastern's records reveal that its aircraft had experienced a dozen prior engine failures stemming from the absence of O-rings; that Eastern knowingly failed to institute "appropriate" procedures to correct the problem; and that Eastern's "entire want of care or attention to duty and great indifference to persons, property and rights of the plaintiff implies such wantonness, willfulness, and malice as would justify punitive damages." Because related cases were pending in the United States District *1033 Court, the state trial judge stayed King's action.
The related federal actions culminated in the entry of judgments on the pleadings in Eastern's favor based on a determination that the complaints, identical or similar to the one filed by King in the case before us, failed to state a cause of action against Eastern. In Re Eastern Airlines, Inc. Engine Failure, Miami Int'l Airport on May 5, 1983, 629 F. Supp. 307 (S.D.Fla. 1986). Citing the federal court ruling, Eastern filed a motion for judgment on the pleadings in King's state court action. The trial court granted the motion, and entered a final judgment in favor of Eastern. King instituted this appeal, in which he contends that Count III of the amended complaint, predicated on intentional infliction of mental distress resulting in severe and permanent mental pain and anguish, medical expenses, and lost earnings, and Count IV, arising under the Warsaw Convention, allege causes of action justifying the recovery of damages. We agree that Count III states a cause of action.
Relying on the Florida Supreme Court's announcement of an independent cause of action for intentional infliction of emotional distress unaccompanied by physical injury or impact, Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985), and the Restatement (Second) of Torts, § 46 (1965),[3] King maintains that his complaint states a cause of action.[4] In his complaint, King alleges that Eastern's failure to take "appropriate" action following numerous engine failures entitles him to recover under the McCarson standard.
Eastern's response is predicated on its contention that its conduct demonstrated good faith efforts to correct defects even though it failed to eliminate the problem. Eastern cannot prevail at this stage of the proceedings, however. Eastern is not entitled to have the court draw such an inference merely from consideration of the pleadings, even though it may ultimately establish its defense as a matter of proof. In deciding a motion for judgment on the pleadings, the trial court is required to take as true the allegations of the non-moving party and must consider as denied allegations of the movant. Whitaker v. Powers, 424 So.2d 154 (Fla. 5th DCA 1982); Paradise Pools, Inc. v. Genauer, 104 So.2d 860 (Fla. 3d DCA 1958). A judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment as a matter of law. Shay v. First Federal of Miami, Inc., 429 So.2d 64 (Fla. 3d DCA 1983). A motion for judgment on the pleadings must be decided "on the pleadings only, without reference to any other affidavits, depositions, or other showings *1034 of fact." Shay, 429 So.2d at 65. In the case under consideration, the movant depends on inferences of fact and law concerning the good faith of its maintenance efforts as a basis for obtaining judgment on the pleadings, a clearly inappropriate predicate under the law. See Reinhard v. Bliss, 85 So.2d 131 (Fla. 1956); Trawick, Florida Practice & Procedure 10-9 (1987). We therefore reverse the trial court's ruling as to Count III and remand for further proceedings.
HUBBART, NESBITT, DANIEL S. PEARSON and FERGUSON, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
For two separate reasons, I must dissent from the conclusion that the complaint states, or is susceptible of stating, a claim for severe mental distress caused by the alleged recklessness of the defendant.

I
First, I thoroughly agree with Judge Barkdull's panel dissent and the decision of Judge Davis in In re Eastern Airlines, Inc. Engine Failure, Miami International Airport on May 5, 1983, 629 F. Supp. 307 (S.D.Fla. 1986) which, dealing with these very facts, held that there was no abstractly reckless conduct in Eastern's maintenance of its airplane. That determination alone requires affirmance of the judgment below.

II
Even assuming, however, as the majority holds, that Eastern's conduct was indeed reckless, I would nevertheless hold that no claim may be stated under the doctrine set forth in Restatement (Second) of Torts § 46 (1965), as adopted by the supreme court in Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985). This is because it is not enough under this rule, as the appellant and the majority seem to assume, that a defendant merely act "recklessly" and that that conduct is subsequently causally related to severe mental distress suffered by a particular plaintiff. To the contrary, the principles of § 46 require that the defendant's purportedly tortious activities be either intended to cause that mental distress or be undertaken with a reckless disregard of the known likelihood that it will occur. In other words, § 46 liability is designed to cover the narrow class of conduct in which, without impact, not only are the plaintiff's interests in psychic tranquility severely and adversely affected, but that those interests are designedly or recklessly disregarded by the defendant as well. Since it is inconceivable that Eastern's alleged negligence, even if recklessly accomplished, was undertaken in knowing, intentional or wanton disregard of the likelihood that the plaintiff would be mentally harmed, I conclude that no § 46 claim can possibly be asserted.
My conclusions in this regard and what I think is the fallacy of the contrary contention advanced by the appellant and accepted by the court are demonstrated by the comments and notes to § 46 itself. Thus, in dealing with the precise issue before us, the scope of the "reckless conduct" aspect of the tort, it is said:
i. Intention and recklessness. The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow. [emphasis supplied]
Illustrations:
15. During A's absence from her home, B attempts to commit suicide in A's kitchen by cutting his throat. B knows that A is substantially certain to return and find his body, and to suffer emotional distress. A finds B lying in her kitchen in a pool of gore, and suffers severe emotional distress. B is subject to liability to A.
16. The same facts as in Illustration 15, except that B does not know that A is substantially certain to find him, but does know that there is a high degree of *1035 probability that she will do so. B is subject to liability to A.[1]
Restatement (Second) of Torts § 46, at 77 (1965). Applying these principles to this case, while it may be said that the defendant's alleged conduct recklessly disregarded the rights of potential plaintiffs to freedom from physical harm or even death, there was surely no "deliberate" disregard of a high degree of probability of a plaintiff's severe mental distress  which is the only conduct a § 46 tort is designed to reach. Putting it in another, more Palsgrafian, way, the scope of the risk involved in Eastern's alleged actions was surely not a violation of a particular plaintiff's right to freedom from severe mental distress. Hence, there can be no liability.
On a theoretical basis, the validity of this proposition is confirmed, I believe, by the very next section of the Restatement itself. Section 47 of the Restatement makes clear that even intentional tortious activity which is not directed against the plaintiff's interest in mental stability does not impose liability, even if, in addition, severe mental distress is in fact an outgrowth of that conduct:
§ 47. Conduct Intended to Invade Other Interests But Causing Emotional Distress
Except as stated in §§ 21-34, and in § 46, conduct which is tortious because intended to result in bodily harm to another or in the invasion of any other of his legally protected interests does not make the actor liable for an emotional distress which is the only legal consequence of his conduct. [emphasis supplied]
Comment:
a. The rule stated in § 46 creates liability only where the actor intends to invade the interest in freedom from severe emotional distress. The fact that the actor intends to invade some other legally protected interest is insufficient to create liability where the only effect of his act is the creation of emotional distress, unless the emotional distress consists of an apprehension of the immediate infliction of an intended harmful or offensive contact, as to which see §§ 21-34. [e.s]
So too, where the actor's conduct is tortious solely because it involves a risk of invading an interest other than the interest in freedom from emotional distress, the tortious quality of the act is insufficient to create liability for emotional distress alone.
Illustrations:
1. A attempts to arrest B under an invalid warrant. B succeeds in avoiding arrest by running away. B is affronted, humiliated and angry, broods over the matter, and suffers severe emotional distress. A is not liable to B.
2. A, who is annoyed by the barking of B's pet dog, shoots at the dog intending to kill it. He misses the dog. B suffers severe emotional distress. A is not liable to B.
Restatement (Second) of Torts § 47, at 80 (1965). Since this is the rule as to intentional activity, it is a fortiori the case when, as here, "only" recklessness is involved.
The decided cases similarly support these views. One of the most important is Wisniewski v. Johns-Manville Corp., 812 F.2d 81 (3d Cir.1987). In that case, the plaintiffs, who had been exposed to but had not contracted asbestosis, attempted to state a § 46 claim for their own mental distress based on the defendants' allegedly reckless failure properly to warn against the dangers of the product. The third circuit, however, affirmed a summary judgment for the defendants on just the ground now asserted:
Although appellants concede that they cannot prove that appellees intentionally harmed them, they contend that proof of appellees' recklessness permits recovery for intentional infliction of emotional harm. Br. for appellants at 31-32. This is an accurate statement of the law. See *1036 Pierce v. Penman, 357 Pa.Super. 225, 515 A.2d 948, 953 (Pa.Super. 1986). Accord: Chuy [v. The Philadelphia Eagles Football Club], 595 F.2d 1265 at 1273 [(3d Cir.1979)] (the challenged conduct must be intentional or reckless); Restatement (Second) of Torts § 46 ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional stress to another ...") (emphasis supplied).
Before us appellants maintain that the district court misapplied this standard and that it granted summary judgment because of appellants' failure to demonstrate appellees' intent to harm. In support of this contention, they cite to one portion of the district court's memorandum opinion: "[I]t is rather farfetched to suggest that defendants' conduct ... was calculated to cause emotional distress." Wisniewski v. Johns-Manville Corp., Civ. No. 81-0489, slip op. at 5 (E.D.Pa. March 28, 1986), reprinted in app. at 11 [1986 WL 3858]. Appellants apparently anchor their argument on the phrase "calculated to cause," and draw the inference that the district court considered only intentional, and not reckless, conduct. We do not read the district court's opinion so narrowly. The court's statement is an accurate statement of the prevailing legal standard. See Papieves [v. Lawrence], 437 Pa. [373] at 378, 263 A.2d [118] at 121; [(1970)] accord: Wisniewski [v. Johns-Manville Corp.,], 759 F.2d at [271] 275; [(3d Cir.1985)] Beidler v. W.R. Grace, Inc., 461 F. Supp. 1013, 1016 (E.D.Pa. 1978), aff'd without op. 609 F.2d 500 (3d Cir.1979). [emphasis supplied]
* * * * * *
More important, appellants have not referred to evidence demonstrating that their fears of contracting asbestos-related illnesses were the "natural and a probable consequences" of appellees' failure to place warning labels on finished asbestos products. See Chuy, 595 F.2d at 1275. At trial, the claimants would have had the burden of proving appellees' "`knowledge ... that severe emotional distress is substantially certain to be produced by [their] conduct.'" Hoffman v. Memorial Osteopathic Hospital, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985) (quoting Forster v. Manchester, 410 Pa. 192, 199, 189 A.2d 147, 151 (1963)) (emphasis deleted). Without evidence of the manufacturers' "`deliberate disregard of a high degree of probability that the emotional distress will follow,'" Chuy, 595 F.2d at 1275, appellants have not met their burden  they have not raised a genuine fact issue as to recklessness.
Wisniewski, 812 F.2d at 86-87; see also Harkcom v. East Texas Motor Freight Lines, Inc., 104 Ill. App.3d 780, 60 Ill.Dec. 494, 433 N.E.2d 291 (1982); Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 544 A.2d 857; Ford v. Village Imports, Ltd., 92 A.D.2d 717, 461 N.Y.S.2d 108 (1983), appeal denied, 59 N.Y.2d 604, 464 N.Y.S.2d 1025, 451 N.E.2d 504 (1983). On the other hand, neither the appellant nor the majority cite any contrary decision applying § 46 to what may be deemed "standard" negligence actions  like an automobile accident, a product liability case, or one like this, alleging improper maintenance of equipment  which are basically concerned with the foreseeability of "ordinary" physical injury. The decisions upon which they do rely, as collected, for example, in note 4 of Judge Baskin's opinion, involve activity in which the actor deliberately engages and which he either intends or recklessly disregards the known likelihood of its causing severe mental distress. As I have endeavored to establish, that is not true here.
In essence, the majority view amounts to establishing an exception to the recently reaffirmed "impact rule," Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla. 1985), which would arise in every case in which the defendant acts recklessly. It would apply when, for example, a highly intoxicated driver recklessly operates his vehicle and narrowly misses but severely frightens a plaintiff, or when a plaintiff uses and becomes mentally concerned over some potential harm, but is not actually "impacted" or physically injured by a product  like a Mustang or a Dalkon Shield  *1037 which may have been recklessly manufactured. Whatever the law of Florida may previously have been, see Crane v. Loftin, 70 So.2d 574 (Fla. 1954) (dictum); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950) (dictum), it is very clear that there is no such exception under the present law of our state. Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla. 1985); Sguros v. Biscayne Recreation Dev. Co., 528 So.2d 376 (Fla. 3d DCA 1987), review denied, 525 So.2d 880 (Fla. 1988); Davis v. Sun First Nat'l Bank, 408 So.2d 608 (Fla. 5th DCA 1981), review denied, 413 So.2d 875 (Fla. 1982); see Harkcom, 104 Ill. App.3d at 780, 60 Ill.Dec. at 494, 433 N.E.2d at 291.
I would affirm the judgment below.
BARKDULL and JORGENSON, JJ., concur.
NOTES
[*] Judge Ferguson participated in the decision on rehearing, but not in the original decision.
[1] We note that Count III was drafted before the supreme court adopted § 46 of the Restatement (Second) of Torts and its definition of the tort of intentional or reckless infliction of mental distress. Count III therefore tracks the language of Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950), in which the supreme court allowed the recovery of damages for emotional distress if the defendant committed a separate tort. Consequently, Count III is framed in terms of "entire want of care," "willfulness," and "wantonness," rather than the language of the Restatement. We do not perceive any obstacle to our consideration of the issue; on remand appellant may amend the complaint.
[2] The trial court dismissed Count I, a breach of contract claim, and Count II, a negligence claim. Those rulings are not included in this appeal.
[3] Many of the cases cited by both appellant and appellee are cases in which the court considers the propriety of awarding punitive damages. We cite these cases as analogs to the case before us. Restatement (Second) of Torts § 46, Comment d.
[4] Restatement (Second of Torts, § 500, Comment f provides:

Intentional misconduct and recklessness contrasted. Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.
[5] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.A. App. § 1502.
[6] Article 25 provides in pertinent part:

(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
[7] Restatement (Second) of Torts, § 46, Comment h provides:

Court and jury. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.
[8] See, e.g., Krystal v. British Overseas Airways Corp., 403 F. Supp. 1322 (C.D.Cal. 1975); Husserl v. Swiss Air Transport Co., Ltd., 388 F. Supp. 1238 (S.D.N.Y. 1975).
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.A.App. § 1502.
[2] See, e.g., Krystal v. British Overseas Airways Corp., 403 F. Supp. 1322 (C.D.Cal. 1975); Husserl v. Swiss Air Transport Co., Ltd., 388 F. Supp. 1238 (S.D.N.Y. 1975).
[3] In Rhymes, the court held that a wrongful death action could be brought in state court solely on state law theory although the Warsaw Convention would preempt conflicting state remedies. Eastern maintains that the court reached that conclusion because both state law and the Warsaw Convention permitted recovery of damages for wrongful death, and thus, the causes of action under state and federal law were not in conflict. Eastern's reliance on Rhymes is misplaced. Rhymes makes clear that the cause of action created by the Convention is not exclusive, that the Convention states that actions for damages, however founded, are subject to the conditions and limits set out in the convention, and that 49 U.S.C.App. § 1502 note, Art. 24(1), "contemplates the application of the convention limitations to actions founded on a basis other than that of the convention." Rhymes, 636 F. Supp. at 740. Rhymes does not address the issue in this case: which avenues of relief are available when the Convention is silent and not in conflict with a local cause of action?
[1] We note that Count III was drafted before the supreme court adopted § 46 of the Restatement (Second) of Torts and its definition of the tort of intentional or reckless infliction of mental distress. Count III therefore tracks the language of Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950), in which the supreme court allowed the recovery of damages for emotional distress if the defendant committed a separate tort. Consequently, Count III is framed in terms of "entire want of care," "willfulness," and "wantonness," rather than the language of the Restatement. We do not perceive any obstacle to our consideration of the issue; on remand appellant may amend the complaint.
[2] The trial court dismissed Count I, a breach of contract claim, and Count II, a negligence claim. Those rulings are not included in this appeal.
[3] Restatement (Second) of Torts, § 46 (1965), provides:

§ 46. Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (Emphasis supplied.)
[4] He cites as examples: Smith v. Telophase Nat'l Cremation Soc'y, 471 So.2d 163 (Fla. 2d DCA 1985) (intentional emotional distress recognized where cremation society failed to dispose of decedent's ashes in accordance with specific instructions); Dominguez v. Equitable Life Assurance Soc'y, 438 So.2d 58 (Fla. 3d DCA 1983) (damages for mental distress held recoverable where insurance company falsely accused injured insured of fabricating claim); Kirkpatrick v. Zitz, 401 So.2d 850 (Fla. 1st DCA) (recovery allowed skunk-bite victim for intentional infliction of emotional distress where pet-store owner withheld information that he sold skunk and that animal was unavailable for rabies test), dismissed, 411 So.2d 385 (Fla. 1981); Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA) (debtor has cause of action for intentional infliction of emotional distress where credit company falsely told debtor's mother that grandchildren were in serious auto accident) [based on authority of Restatement (Second) of Torts, § 46], cert. dismissed, 379 So.2d 204 (Fla. 1979); Knowles Animal Hosp., Inc. v. Wills, 360 So.2d 37 (Fla. 3d DCA 1978) (recovery for dog owner's mental suffering allowed where veterinarian left dog on heating pad and dog was severely burned), cert. denied, 368 So.2d 1369 (Fla. 1979); Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965) (six-year old child may bring action for intentional infliction of emotional distress where adult made allegedly false statements indicating that the child's mother committed adultery) [based on authority of Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950)], cert. dismissed, 183 So.2d 835 (1966).
[1] These illustrations are avowedly based upon Blakeley v. Shortal's Estate, 236 Iowa 787, 20 N.W.2d 28 (1945).